Rockingham
No. 84-152

### CITY OF PORTSMOUTH

### v.

### GERALD Q. NASH AND SAMUEL TAMPOSI

May 6, 1985

*Tyler Pierce Harwell*, of Portsmouth, by brief and orally, for the plaintiff.

*Shaines, Madrigan & McEachern*, of Portsmouth (*Gregory D. Robbins* and *Paul McEachern* on the brief, and *Mr. Robbins* orally), for the defendant.

PER CURIAM. This appeal stems from an action by the plaintiff, the City of Portsmouth, to recover from the defendant property owners, Gerald Nash and Samuel Tamposi, the unpaid water, sewer, and fire protection fees charged to McConnell Plastics, Inc., the tenant who occupied premises owned by the defendants.

Beginning in or about March of 1979, the City of Portsmouth supplied water, sewer, and fire protection service to McConnell. All bills for these services were forwarded every four months directly to McConnell and not to the defendants.

As of July 21, 1981, McConnell owed the City of Portsmouth $9,134.43 for the four-month period immediately preceding, made up of the following:

|   | | |
|---|---|---|
| 1. Sewer fee— | $ 5,472.00 |
| 2. Water fee— | 3,503.44 |
| 3. Fire services— | 91.96 |
| 4. Arrears— | 65.07 |
| 5. Penalty— | 1.96 |
| Total | $ 9,134.43 |

Although McConnell did not pay this amount within thirty days as it was required to do, the city did not contact or correspond with McConnell regarding the unpaid balance. Nor did it give any notice to the property owners that their tenant had fallen behind in its water and sewer payments.

On or after October 2, 1981, the City of Portsmouth Water

Department received notice that McConnell had filed for bankruptcy. The city had, as of that date, received no payment on the July 21, 1981, bill.

Although it continued to supply services, receipt of the notice of McConnell's bankruptcy filing prompted the water department to close the McConnell account and open a new account in the name of the bankrupt. A three-month's bill dated October 30, 1981, contained water and sewer charges totaling $7,816.82. Because the city had created a separate account for McConnell following the bankruptcy filing, the bill was prorated two-thirds to the old account and one-third to the new. Billings thereafter for service to McConnell were on a monthly basis and were posted to the new account. As of December 31, 1981, the total due for service to McConnell in both accounts for water, sewer and fire service was $23,574.17. Monthly charges were also made for January, February, March and April of 1982.

The city made no attempt to contact the trustee in bankruptcy regarding a payment schedule until approximately January 13, 1982. At that time, the trustee agreed to pay $741.70 per week to be applied to the first amounts due after the filing for bankruptcy. These payments continued for three weeks, with reduced payments being made sporadically for a short time thereafter.

By letter of January 8, 1982, the city's water department notified the defendants for the first time of the arrearages of McConnell and the defendants' possible liability therefor. The letter informed the defendants that McConnell's total outstanding balance was $9,134.43, and cited RSA 38:22, which provides "[a]ll charges . . . for gas, water, or electricity . . . shall become a lien upon any real estate where such . . . is furnished . . . ." The lien created by this statute is in effect for one year after the last charges made. Of the $9,134.43 arrearage specified in the letter, $3,503.44 was for water.

The letter from the water department was followed on February 26, 1982, by a second letter from David R. Connell, city attorney representing the water department, requesting payment by the defendants of $9,134.43. Again, only RSA 38:22 was cited as the basis for the defendants' liability for the unpaid utility bills of their tenant.

On March 2, 1982, the plaintiff brought suit for $9,134.43, claiming in count I the amount of $3,595.40 for water pursuant to RSA 38:22 and in count II the sum of $5,472.00 for sewer services pursuant to RSA chapter 252 (recodified at RSA 149-I:11 (Supp. 1983)) and Laws 1941, chapter 168.

The city continued to supply utility services to McConnell until April 14, 1982. On April 15, 1982, the defendants sold the premises

to First Phillips Corporation and agreed to indemnify First Phillips for any liability that might accrue to it as a result of the unpaid utility charges.

On November 18, 1982, the city filed a claim with the bankruptcy court as a priority creditor of McConnell, claiming $24,139.14 for unpaid water, sewer and fire protection services. The city did not collect on this claim since McConnell had no assets. On February 8, 1983, the plaintiff moved to amend its original complaint against the defendants by changing the amount owed from $9,134.43 to $24,239.19, which represented the total amount claimed due for water, sewer and fire services to McConnell both prior and subsequent to the declaration of bankruptcy on October 2, 1981. This amendment was the first indication that the plaintiff gave the defendants of any liability over the $9,134.43 set forth in the city's letters to the defendants and in the original complaint. The motion to amend listed as statutory authority RSA 38:22, which addresses water, but not sewer, charges. On April 19, 1983, the plaintiff filed another motion to amend the declaration to allege a claim for sewer charges under RSA chapter 252 and Laws 1941, chapter 168.

The Superior Court (*Nadeau*, J.) held that the City of Portsmouth was entitled to enforce its lien against the defendants for sewer charges in the same manner as for water, and that all accrued charges for water and sewer services used by McConnell, both prior to and after its filing for bankruptcy, were chargeable to the defendant building owners up to the date of the January 8, 1982, letter first notifying the defendants of any outstanding charges. The court then entered judgment for the city in the amount of $23,574.17.

On appeal, the defendants claim that the extent of their liability is $3,503.44. As the basis for their claim, they state that the only notices to them, by the city, of their possible liability—the letters of January and February 1982, and the complaint filed on March 2, 1982—stated that the defendants owed the city $9,134.43, the total amount owed by McConnell to the city for services provided up to July 1, 1981. By setting forth only this amount, and by filing as a priority creditor with the bankruptcy court, the defendants claim that the city waived its lien and any right it might have had to an amount above $9,134.43.

The defendants further contend that they are not liable for the full $9,134.43, but only for the water fee portion, $3,503.44, because the letters to them from the city cited only RSA 38:22 as authority for charging a landlord for unpaid utility services supplied to a tenant. This statute deals with liens for water charges. Liens for sewer charges in Portsmouth are created by authority of Laws 1941, chapter 168. Since this statute has a specific notice provision, which the

defendants argue was not complied with, they reason that they may be held accountable only for those charges for which they did receive notice, the water charges, and not for the sewer charges. We agree in part with the defendants.

Assuming, *arguendo*, that the city had a right to collect from the defendants all unpaid utility charges owed by their tenant, we agree with the defendants that the city has waived whatever rights it had to collect more than $9,134.43, the amount which had been billed at the time McConnell filed for bankruptcy.

A lien may be waived by actions of the lien holder, or by any special agreement entered into by the parties, which are inconsistent with the existence of the lien. *Fuller v. Brown*, 67 N.H. 188, 34 A. 463 (1892); *Pickett v. Bullock*, 52 N.H. 354 (1872). The actions of the city in this case were sufficiently inconsistent with its right to a lien in excess of the amount owed by McConnell, at the time of the bankruptcy filing, to constitute a waiver of that right.

In its letter to the defendants of January 8, 1982, the city, through its water superintendent, stated:

> "The schedule of payments for water consumption during the period of bankruptcy . . . will be determined by the Bankruptcy Court, however in the event that the above referenced balances outstanding prior to bankruptcy filing are not paid by the tennants [sic], the responsibility lies with the property owner."

By this letter, the city notified the defendants that it would be seeking payment from them only for charges accrued by McConnell as of July 1, 1981, and clearly indicated that it was setting up a schedule of payments through the bankruptcy court for all subsequent charges. Its conduct thereafter was completely consistent with this intent. On February 26, 1982, the city, by its attorney, sent a second letter to the defendants in which it again asserted that the defendants owed the City of Portsmouth $9,134.43 because of the unpaid McConnell account. On March 2, 1982, the city instituted suit against the defendants for the same $9,134.43. It was not until February 8, 1983, when the city moved to amend its complaint by substituting $24,239.19 for the previously stated amount owed, that the city for the first time indicated to the defendants that they were liable for all unpaid charges accrued by McConnell.

"A waiver may be inferred from a course of conduct." *Logic Assoc's, Inc. v. Time Share Corp.*, 124 N.H. 565, 571, 474 A.2d 1006, 1010 (1984). Based on the communications of the city with the defendants, in combination with the city's filing as a priority credi-

tor with the bankruptcy court, it could reasonably be inferred that the city had waived its right to collect more than $9,134.43 on the lien. The city therefore may not now make a claim to recover more than that amount.

The defendants further contend that they are only responsible for that portion of the $9,134.43 which represents charges for water services, $3,503.44. They claim that the city did not comply with the notice requirements of Laws 1941, chapter 168, the statute creating a lien on property for unpaid sewer charges, so that the defendants cannot be held accountable for those charges. We disagree.

Laws 1941, chapter 168 states:

> "2. *Notice.* Notice of the charges for sewer rents shall be given to the owner or owners of real estate chargeable therefor in such manner as the mayor and aldermen shall prescribe."

Section 3 of chapter 168 provides for a lien on the property for unpaid sewer charges in language nearly identical to that of RSA 38:22, the statute creating liens for unpaid water charges. RSA 38:22 contains no notice provisions.

Apparently officials of the City of Portsmouth have not promulgated any method of notifying property owners of sewer charges beyond periodic billing. Although this method is probably effective in most cases, it is insufficient in a case such as the one before us, where the contract for utility services is between the city and the tenant so that only the tenant, and not the owner, is billed. In such cases, the owner of the property does not receive notice of overdue balances for which he may be responsible.

Although we can envision circumstances where lack of a method of routinely notifying property owners of unpaid utility bills owed by their tenants would violate the notice requirement of Laws 1941, chapter 168, it did not do so in this case. The defendants here received actual notice of their liability for sewer charges. The letters of January 9 and February 26, 1982, stated that the defendants were responsible for water charges and cited only RSA 38:22. Nevertheless, the amount stated in the letter, $9,134.43, included both water and sewer charges. Additionally, the complaint filed on March 2, 1982, specifically claimed the $5,472.00 for sewer charges and cited Laws 1941, chapter 168 as the basis for the defendants' liability for this amount. Accordingly, the defendants are responsible for the sewer charges.

The defendants also contest their liability for fire protection services. They allege that since there is no statute creating a lien for

those charges, the owners in this case cannot be held accountable for them. We disagree.

In the order denying the defendants' motion for reconsideration, the court stated that it understood the charge for fire protection to be related to water services to the sprinkler system and not for general fire protection. On the record, there is evidence to support the court's finding, and we will not therefore overturn this finding of fact. *Vannote v. Laurie*, 122 N.H. 952, 953, 453 A.2d 1252, 1253 (1982).

We note that in the case of unpaid utility charges, municipalities have the power to prevent injustice to themselves by requiring deposits and discontinuing service when there are overdue accounts. *Whitefield &c. District v. Bobst*, 93 N.H. 229, 232–33, 39 A.2d 566, 568 (1944). In the present case, the city first notified the defendants that they were liable for $9,134.43 on January 8, 1982, even though that amount was for services provided up to July 1, 1981 and billed on July 21, 1981. Although McConnell did not pay its bill within thirty days as it was required to do, the city did not contact or correspond with either McConnell or the defendants regarding the unpaid balance and did not in any other way follow its own standard procedures leading to shut-off of services for non-payment.

For all of the above reasons, we hold that defendants were liable to the City of Portsmouth for $9,134.43.

*Reversed in part; affirmed in part; remanded.*

SOUTER, J., did not sit; the others concurred.