Grafton
No. 82-524

# LOGIC ASSOCIATES, INC.

v.

# TIME SHARE CORPORATION

February 29, 1984

*Wadleigh, Starr, Peters, Dunn & Chiesa*, of Manchester (*James C. Wheat* on the brief and orally), for the plaintiff.

*Moulton, Smith, Samaha & Vaughan P.C.*, of Littleton, and *Fine & Ambrogne*, of Boston, Massachusetts (*Robert F. Sylvia* and *Stephen U. Samaha* on the brief, and *Mr. Sylvia* orally), for the defendant.

KING, C.J. In this case we address the validity of a license and service agreement containing a covenant not to compete in a defined market area. There are two questions presented: first, whether the interpretation of the covenant not to compete was, by virtue of the agreement, a matter for arbitration; and second, the meaning of the contract clause "in competition with." For the reasons which follow, we affirm the decision of the superior court that arbitration was not required and affirm the court's construction of the phrase "in competition with."

The defendant, Time Share Corporation (Time Share), is engaged in the business of selling computer time services. The plaintiff, Logic Associates, Inc. (Logic), which was formed by a former employee of Time Share, provides software programs for the printing industry. In 1972, Time Share and Logic entered into a written contract, under which Logic agreed to purchase time-sharing services on Time Share's computers and lease the software programs, originally designed by Time Share, to its printing industry customers. Logic agreed to pay Time Share based upon the amount of its customer use of Time Share's hardware. Logic's customers were connected to Time Share computers by telephone lines. The time-sharing contract was intended to cover the period from August 1, 1972, to August 1, 1975.

Time Share and Logic entered into a new time-sharing agreement in 1974 which superseded the 1972 agreement. This agreement, like the 1972 time-sharing agreement, contained a provision under which Logic agreed to use Time Share's services exclusively.

In 1974, one of Logic's printing customers, Eastern Press, demanded its own in-house computer to run Logic's software programs. However, for Logic's programming or application software to operate properly, it had to be used in conjunction with Time Share's own operating software.

Eastern Press requested a small mini-computer known as a stand-alone system to operate Logic's software. As a result of this request, on July 3, 1974, Time Share and Logic executed a license and service agreement which allowed Logic to purchase stand-alone mini-computers from Time Share. It is this agreement that is the focus of the parties' dispute.

After the license and service agreement was executed, Time Share helped Logic install the mini-computer on the premises of Eastern Press in Connecticut. When the mini-computer was operational, the data of Eastern Press was removed from Time Share's computers. Eastern Press then operated the Logic software independently of Time Share's computers. Later, Logic purchased another stand-alone mini-computer from Time Share for the Danbury Press located in Connecticut.

In the license and service agreement, Logic agreed to pay Time Share fifty dollars each month toward a $40,000 licensing fee for the Eastern Press system, and Logic also paid fifty dollars each month for the Danbury Press system. According to the agreement's payment schedule,

> "LOGIC shall pay Two Thousand Five Hundred ($2,500) Dollars on July 15, 1974; Two-Thousand Five Hundred ($2,500) Dollars on October 15, 1974, and the balance in monthly payments beginning one month from the date of the software being operational on Hewlett-Packard hardware on the premises of EASTERN PRESS in New Haven, Connecticut. The payments shall be Fifty ($50) Dollars per month per system installed by LOGIC for single corporate uses and Twenty-five ($25) Dollars per month *per port* for time-sharing systems installed by LOGIC for multiple corporate users."

(Emphasis added.) The license and service agreement also provides for Logic to pay Time Share a penalty charge if Logic installed or provided time-sharing services in competition with the services of Time Share in a defined marketing area.

> "The TSC [Time Share] marketing area is the states of New England, New York and New Jersey plus any area within 50 miles of a TSC multiplexor location. *LOGIC will not install or provide time-sharing systems in competi-*

*tion with TSC in said marketing area except by paying an additional penalty charge* of One Hundred Seventy-Five ($175) Dollars per month *per port* for each such time-sharing service installed, which charge shall decrease to Seventy-Five ($75) Dollars per month per port once 12 ports are so installed. These penalty payments are not included in the Forty-Thousand ($40,000) Dollar purchase price. This penalty provision shall expire 5 years from the date of this Agreement. This penalty provision shall not apply to any area which becomes part of the marketing area of TSC after installation of such a time-sharing system by LOGIC in such area."

(Emphasis added.)

The license and service agreement also contains an arbitration clause which provides:

"Any dispute concerning this Agreement shall be settled by arbitration in Hanover, New Hampshire under the rules of the American Arbitration Association in accordance with the law of New Hampshire. Such award will be binding and may be entered in any Court of competent jurisdiction."

The meaning of the contractual phrase "in competition with" became a subject of dispute, both after Time Share sold Logic a computer for use in a business in Hartford, Connecticut in 1976, and when Logic sought to buy another computer from Time Share to use in Hanover, New Hampshire. Logic intended to use the computers to provide time-sharing services for multiple corporate users in neutral locations. Logic, in effect, attempted to establish its own time-sharing system for Logic customers.

There was evidence introduced at trial indicating that during the period of the contractual dispute in 1976, the two principals of Logic believed that they were prevented by the license and service agreement from operating a time-sharing system within Time Share's market area without incurring a penalty charge. However, Time Share and Logic were subsequently unable to agree on the definition of the term "in competition with" in the license and service agreement. Logic's position was that the Hartford location was not in competition with Time Share's system because it only served Logic's customers, and not Time Share's present customers (those customers remaining after Logic removed its customers from the Time Share system). Logic maintained that the contractual prohibition against providing time-sharing services "in competition with" Time Share

only precluded potential Logic competition for Time Share's *remaining* customers.

In clear contrast, Time Share contended that the time-sharing systems "in competition with" it should include those systems provided to Logic's customers who were being serviced on Time Share's system, as well as those systems provided to Time Share's customers. It further argued that, at the very least, the prohibition on competition included all past time-sharing customers who originally used Time Share's computers, only later to use a time-sharing system not owned by Time Share. Time share further claimed that it was losing money due to Logic's practice of removing customers from Time Share's system.

Time Share contended that Logic "cancelled" the Hanover computer contract, by its announced intention to operate its own time-sharing system, which was scheduled to be delivered on September 24, 1976. In response, Logic argued that Time Share had threatened to cease providing time-sharing services to Logic customers who remained on Time Share's system. Subsequently, Logic filed a bill in equity seeking a temporary injunction ordering Time Share to arbitrate the disputed competition clause, and was granted a temporary restraining order on September 13, 1976. *See* SUPER. CT. R. 161(a). The order was dissolved after a hearing eight days later.

Logic then commenced an action at law for damages, and no further proceedings were held in superior court on the equity action. Time Share filed an action for recoupment seeking damages for violation of the license and service agreement, and Logic moved to dismiss the recoupment action. Logic argued that Time Share's claim, that it was entitled to have Logic pay the penalty charge under the license and service agreement, was subject to the arbitration clause of the agreement. The Master (*E. Donald Dufresne*, Esq.) recommended that Logic's motion be denied because Logic had waived its right to compel arbitration. The recommendation was approved by the Superior Court (*Johnson*, J.) on August 31, 1981.

On November 1, 1982, the trial began. The Trial Judge (*Johnson*, J.) determined the meaning of the clause "in competition with, " as a matter of law, by instructing the jury that: "if Logic took their customers off of Time Share computers I find that Logic had to pay a penalty. It is clear to me that as Logic took . . . their customers off of the computers of Time Share that as a consequence . . . there has been competition in the sense that these customers are no longer buying their time-sharing services from Time Share." The jury determined the penalty charge to be $115,541 and Logic appeals.

■ We begin our inquiry with the question whether arbitration

of the issues posed by the license and service agreement was required by the agreement itself. We affirm the master's recommendation that Logic's right to arbitration, provided by the license and service agreement's arbitration clause, was waived when Logic filed a common-law writ for damages in superior court against Time Share.

■■ Clearly, parties to a contract containing an arbitration clause have the right to arbitrate a dispute arising under the contract. *See United Steelworkers of America v. Warrior & Gulf Navigation Company*, 363 U.S. 574, 578 (1960) ("[i]n the commercial case, arbitration is the substitute for litigation."). However, it has also been well established that parties are free to waive their rights to arbitration under a contract, *Tothill v. Richey Ins. Agency, Inc.*, 117 N.H. 449, 453, 374 A.2d 656, 658 (1977), and proceed to present their contractual dispute to a court. *Redlon Company v. Corporation*, 89 N.H. 137, 139, 195 A. 348, 350 (1937); *see also Jones Motor Co. v. Chauffeurs, Teamsters, Etc.*, 671 F.2d 38, 42 (1st Cir. 1982).

■■ Whether a party has waived its right to arbitration is a question of fact for the trial court to determine from the circumstances of each case. *Babcock v. Sol Corp.*, 118 N.H. 340, 342, 386 A.2d 1259, 1261 (1978). "'Waiver requires a finding of an actual intention to forego a known right.'" *Demers Nursing Home, Inc. v. R. C. Foss & Son, Inc.*, 122 N.H. 757, 761, 449 A.2d 1231, 1233 (1982) (quoting *Tothill v. Richey Ins. Agency, Inc., supra* at 454, 374 A.2d at 659 (citations omitted)).

■■ A waiver can be inferred from a course of conduct. *Second Congregational Society v. Stubbins Assoc.*, 108 N.H. 446, 447–48, 237 A.2d 673, 674 (1968); *see Jones Motor Co. v. Chauffers, Teamsters, Etc., supra* at 43. "'Any conduct of the parties inconsistent with the notion that they treated the arbitration provision as in effect, or any conduct that might be reasonably construed as showing that they did not intend to avail themselves of such a provision, may amount to a waiver' thereof." *Second Congregational Society v. Stubbins Assoc. supra* (citations omitted).

■ In view of Logic's conduct, we are unable to conclude as a matter of law that the master erred in finding that Logic waived its right to compel arbitration.

■ We turn to the second question raised by Logic. The construction of a written contract is a question of law for this court except when the meaning of the language depends upon disputed extrinsic evidence. *Baker v. McCarthy*, 122 N.H. 171, 174–75, 443

A.2d 138, 140 (1982). We will interpret the contract according to the common meaning of its words and phrases. *Murphy v. Doll-Mar, Inc.*, 120 N.H. 610, 611–12, 419 A.2d 1106, 1108 (1980). "The intent of parties in entering an agreement is to be judged by objective or external criteria rather than by unmanifested states of mind of the parties." *Tentindo v. Locke Lake Colony Ass'n*, 120 N.H. 593, 599, 419 A.2d 1097, 1101 (1980).

██ ██ The conversations between the principals of Time Share and Logic, in which both parties exchanged differing interpretations of what they intended when they signed the license and service agreement, are not controlling when the language of the agreement is plain and unambiguous. *See Watkins v. Petro-Search, Inc.*, 689 F.2d 537, 538 (5th Cir. 1982). The parol evidence rule states that when two parties have entered into an agreement and have expressed the agreement in a written contract to which both parties have assented as the complete and accurate integration of the contract, evidence offered at trial, whether parol or otherwise, of previous understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing. *MacLeod v. Chalet Susse Int'l, Inc.*, 119 N.H. 238, 242, 401 A.2d 205, 208 (1979) (citations omitted).

██ The "in competition with" clause of the license and service agreement is plainly unambiguous. *See Lapierre v. Cabral*, 122 N.H. 301, 305, 444 A.2d 522, 525 (1982). Thus, interpretation of the covenant not to compete by the superior court was properly based on the trial court's view, as a matter of law, of the plain meaning of the phrase "in competition with." *See id.* We are unwilling to conclude that as a matter of law the superior court's interpretation of the clause is wrong. We do not believe that the trial court could have reached any conclusion other than the one it did in construing the covenant not to compete.

*Affirmed.*

BATCHELDER, J., did not sit; the others concurred.