Hillsborough
No. 84-142

## Mast Road Grain & Building Materials Co., Inc.

v.

## Ray Piet, Inc. *& a.*

March 1, 1985

*W. Jean Laflamme* and *John F. Davis*, of Manchester (*Mr. Laflamme* and *Mr. Davis* on the brief, and *Mr. Davis* orally), for the plaintiff.

*Alexis Komaridis*, of Auburn, by brief and orally, for the defendant Ella Piet.

KING, C.J.   In this action for debt, the question before us involves the interpretation of a credit agreement, signed by the defendant Ella Piet, individually and as guarantor of debts owed to the plaintiff by Ray Piet, Inc. The Superior Court (*Flynn*, J.) approved the recommendation of a Master (*R. Peter Shapiro*, Esq.) holding Ella Piet liable for interest on the debt at 24% annually, the rate specified in the credit agreement, computed from the date of demand until the date of actual payment. Ella Piet argues that the interest provision in the agreement did not operate after the suit was brought, and that interest after that date should have been computed at the statutory rate of 10% annually. RSA 336:1; RSA 524:1-a. We agree, and reverse the trial court's award of 24% interest on the debt following the initiation of the lawsuit on November 17, 1981.

The facts are not in dispute. Ray Piet was the sole shareholder and president of Ray Piet, Inc., and his wife Ella was a director and treasurer of the corporation. Ray Piet, Inc. had a substantial line of credit with the plaintiff company prior to 1980, making frequent purchases of construction materials and owing a balance due of several thousand dollars.

At the plaintiff's request, Ray and Ella Piet signed two documents on or about June 22, 1980. In the first, the "Guarantee Agreement," they personally guaranteed the payment of all sums owed to the plaintiff by Ray Piet, Inc., according to the tenor of the credit agreement with the plaintiff. In the event of default, they authorized the plaintiff to proceed against them "for the full amount due, including interest, service charges, cost of collection and reasonable attorney's fees."

The second document, signed by Ray and Ella Piet individually and as officers of Ray Piet, Inc., was an "Application for Credit and Credit Agreement." It reads, in pertinent part:

> "[Debtor-defendants] hereby agree to pay for all purchases charged to this account . . . within thirty (30) days after [plaintiff mails our] monthly bill. [Debtor-defendants] also agree to pay a FINANCE CHARGE at a periodic rate of 2% (24% corresponding ANNUAL PERCENTAGE RATE) per month . . . on any balance that remains unpaid for a period of thirty (30) days after the purchases

have been billed. If any portion of this account remains unpaid for more than thirty (30) days, [plaintiff] may then ask [debtor-defendants] to pay the entire amount then due immediately and [debtor-defendants] agree to pay all accrued finance charges to date, and all costs of collection, including attorney's fees."

In March of 1981, Ella Piet commenced divorce proceedings against her husband. Shortly thereafter, both Ray Piet, Inc. and the Piets individually stopped making payments on the plaintiff's account. On September 29, 1981, the plaintiff made a formal demand on Ray Piet. On November 17, 1981, the plaintiff filed suit against all three debtors to collect the amount owed. No formal demand was made on Ella Piet until May 18, 1982.

After a hearing, the master recommended judgment for the plaintiff, finding both Ray and Ella Piet personally liable for the full amount of the debt, plus "interest computed at the rate of twenty-four percent (24%) per annum as of September 29, 1981, and attorney fees." The court approved the recommendations on January 4, 1984.

Ella Piet (hereafter "the defendant") then brought this appeal, contesting the judgment only insofar as it included interest of 24% after November 17, 1981, the day suit was brought. The defendant argues that the interest provision in the credit agreement did not operate after the suit was filed, and that after November 17, 1981, the interest should be computed at the statutory rate of 10% annually. RSA 336:1. All disputed amounts have been placed in escrow pending this appeal, and the plaintiff concedes that interest ceased to accrue at 24% on January 20, 1984, the date judgment was entered against all three defendants.

█ It is well established that interest may be recovered "where it is an incident to the debt, founded upon the agreement of the parties . . . ." *McIlvaine v. Wilkins*, 12 N.H. 474, 480 (1841). Whether interest "can be recovered may depend on various facts as to demand, agreement, or usage of trade . . . ." *Arcadia &c. Mills v. Company*, 89 N.H. 188, 190, 195 A. 681, 683 (1937).

In order to determine the appropriate interest to be charged against the defendant in this case, we must determine the scope of the parties' agreement to pay interest, and its application to the defendant. We accordingly turn to the basic rules for the interpretation of contracts.

██ "The construction of a written contract is a question of law for this court . . . ." *Logic Assoc's, Inc. v. Time Share Corp.*, 124 N.H.

565, 571, 474 A.2d 1006, 1010 (1984); *Baker v. McCarthy*, 122 N.H. 171, 174–75, 443 A.2d 138, 140 (1982). When interpreting the terms of a contract we will do so "according to the common meaning of its words and phrases." *Logic Assoc's, Inc. v. Time Share Corp., supra* at 572, 474 A.2d at 1010.

The credit agreement at issue explicitly provided for the possibility that the defendants might not pay for all their purchases within thirty days of billing by imposing a finance charge on the unpaid balance. The credit agreement stated that if the balance on account remained unpaid for thirty days after billing, the plaintiff "may then ask [debtor-defendants] to pay the entire amount then due immediately and [debtor-defendants] agree to pay all accrued finance charges *to date*, and all costs of collection, including attorney's fees."

■ The calculation of the finance charges under the credit agreement depends upon the meaning of the phrase "to date." Given the context of the phrase "to date," we find that the finance charges accrued on the date of plaintiff's demand for immediate payment of the full amount of the unpaid account. At the time of demand, therefore, the full amount of the finance charges of 24% annually is established.

■ To interpret the words "to date" to extend beyond the existence of the credit agreement itself, so that the 24% interest rate would be applicable beyond demand, would be, in effect, to treat those charges as a liquidated damages provision. This court will refrain from such an interpretation of a contract provision concerning finance charges absent a clear expression by the parties that the finance charge is to extend beyond demand or a suit for collection.

■ Unless the parties have clearly provided their own interest rate for damages during the pending lawsuit to prove and collect a claimed debt, their interest damages should be determined at the statutory rate of 10% once suit is instituted. RSA 336:1 imposes a 10% interest rate "on judgments and in all business transactions in which interest is paid or secured, unless otherwise agreed upon in writing . . . ." In the absence of a demand for payment prior to the institution of suit, RSA 524:1-a provides that, "in any action on a debt or account stated or where liquidated damages are sought, interest shall commence to run from the time of the institution of suit."

■ In this case demand for payment of the full amount of the account due, along with accrued finance charges, was made to Ray Piet and his business, Ray Piet, Inc., on September 29, 1981. No

demand was made to Ella Piet, however, and on November 17, 1981, a suit was filed against Ella Piet and the two other defendants to recover the debt. This court has held that filing suit for a debt owing may be considered a demand.

> "But, in some cases, in order to facilitate the commencement of actions, a technicality is introduced, and bringing suit is held to be a demand . . . . And, in such cases, it is not necessary for the plaintiff to allege or prove an actual demand, because the action is, of itself, a demand in law."

*Kendall v. Brownson*, 47 N.H. 186, 198 (1866) (Doe, J., dissenting) (citations omitted); *see also Damasiotes v. Dumas*, 97 N.H. 402, 403, 89 A.2d 756, 757 (1952). Therefore, we will treat the date suit was filed as the date of demand upon the defendant.

Once a breach of the credit agreement had occurred by failure to pay debts within thirty days of billing, and demand was made, the finance charges accrued, and the remedies available under the credit agreement were the costs of collection and attorney's fees.

■ However, both RSA 336:1 and RSA 524:1-a are applicable to the facts in this case; therefore the plaintiff may receive an interest rate of 10% upon the total amount of the debt owing from the commencement of the suit on November 17, 1981, until payment is made by the defendants.

Accordingly, we reverse the trial court's finding that interest of 24% annually continued after November 17, 1981.

*Reversed in part;*
*affirmed in part.*

All concurred.