Derry District Court
No. 2008-456

DENNIS TULLEY & a.

v.

WILLIAM SHELDON & a.

Submitted: August 13, 2009
Opinion Issued: September 18, 2009

*Forman, Corcoran & Associates, P.A.*, of Londonderry (*Thomas J. Corcoran* on the brief), for the plaintiffs.

*Crusco Law Office, PLLC*, of Bedford (*Kysa M. Crusco* on the memorandum of law), for the defendants.

CONBOY, J. The plaintiffs, Dennis and Patricia Tulley, appeal the order of the Derry District Court (*Stephen*, J.) as it pertains to the denial of expert witness costs, attorney's fees, and prejudgment interest arising out of an action against the defendants, William and Deanna Sheldon. We affirm in part, reverse in part and remand.

The record supports the following facts. On January 31, 2006, the parties entered into a residential lease. The defendants agreed to pay the plaintiffs $1,400.00 monthly for use of their condominium in Londonderry. The lease ran from February 1, 2006, to July 31, 2007.

In May 2006, after a period of substantial rain, the defendants noticed water in the basement. They contacted the plaintiffs, who used a wet vacuum to remove it. The plaintiffs left the wet vacuum and a dehumidifier with the defendants to further address the issue. Shortly thereafter, the defendants contacted the plaintiffs, complaining of a mold smell. The

plaintiffs contacted their regular contractor, William Roussel, and Messina Flooring, the company that installed the basement carpet, to check the property. At the end of May, the defendants again contacted the plaintiffs after observing mold under the carpet at the entryway of the residence. Messina Flooring advised the plaintiffs to call another company, Servpro, to view the property. Servpro saw no evidence of mold. The defendants themselves then contacted a mold expert. The expert examined the residence and produced a report, which the defendants submitted to the local health department, indicating that the mold condition created an unsafe environment for the defendants' immune-compromised children.

In mid-June, the Town of Londonderry building inspector called the plaintiffs to notify them of the report. The plaintiffs then contacted the condominium association to inform them of the potential mold problem. The association requested that the plaintiffs hire JAG Environmental, Inc. (JAG) to investigate the matter. JAG reported that the property was habitable. The plaintiffs so notified the defendants and demanded rent for July.

The defendants vacated the residence on July 14, 2006, leaving their personal property behind. They did not pay rent in July, August or September. On August 16, 2006, the defendants filed a petition for the return of their personal property, which they received at the end of August. The plaintiffs leased the property to another tenant in October.

In November 2006, the plaintiffs filed a writ with the Derry District Court seeking the unpaid rent and other alleged damages. The defendants filed a counterclaim alleging damages for loss of personal property and emergency housing costs. The trial was originally scheduled for January 25, 2007, but was rescheduled several times and finally conducted over two days in April 2008. At trial, several witnesses testified including experts for both sides. The trial court ruled in favor of the plaintiffs on both their claim and the defendants' counterclaim, finding that "the mold, which did in fact exist, was relatively minor in nature and did not rise to the level of remediation." The trial court awarded the plaintiffs $5,894.69 in damages, which included $4,200.00 in back rent and $1,500.00 in attorney's fees for collecting back rent. Although the plaintiffs had requested $15,040.49 in attorney's fees, the court ruled that they were not entitled to fees "relating to hiring dueling experts on mold issues" because the lease did not contemplate such fees and such fees were not reasonable given that "the grav[a]m[e]n of the dispute was back rent in the amount of $4,200.00." For similar reasons, the court also denied the plaintiffs' request for expert witness fees of $2,550.00.

In addition, the court denied the plaintiffs' request for $3,369.91 in interest, ruling that such an award would be "fundamentally unfair" and

"downright cruel" to the defendants "in light of what they have been through with their children's serious illnesses and related expenses." The court awarded the plaintiffs $189.00 in interest under the lease, which represented the lease interest rate (1.5% per month) for three months, and $486.00 in statutory prejudgment interest from the date of the filing of the writ. *See* RSA 336:1 (2009); RSA 524:1-a (2007).

On appeal, the plaintiffs argue that the trial court erred in failing to award them: (1) the full amount of their attorney's fees; (2) expert witness costs; and (3) full interest at the lease rate (1.5% per month) on the unpaid rent and late charges.

■ We first address together the plaintiffs' arguments regarding attorney's fees and expert witness costs. The plaintiffs contend that the trial court erred when it declined to award them attorney's fees and costs related to expert witnesses. "A prevailing party may be awarded attorney's fees when that recovery is authorized by statute, an agreement between the parties, or an established judicial exception to the general rule that precludes recovery of such fees." *Bennett v. Town of Hampstead*, 157 N.H. 477, 483 (2008) (quotation omitted). We will not overturn a trial court's award of attorney's fees unless it is an unsustainable exercise of discretion. *Id.* In applying this standard, we are mindful of the substantial deference given to the trial court's decision on attorney's fees, and we will uphold the decision if the record provides some support for it. *Id.*

■ The trial court's award was based upon its interpretation of the parties' lease. The interpretation of a lease is ultimately a question of law for this court to determine. *190 Elm St. Realty v. Beaudoin*, 151 N.H. 205, 206 (2004). We review the trial court's interpretation of a lease *de novo*. *Pope v. Lee*, 152 N.H. 296, 301 (2005).

■ "A lease is a form of contract that is construed in accordance with the standard rules of contract interpretation." *Id.* We will give the language used by the parties its common meaning as understood by reasonable people and, in the absence of ambiguity, we will determine the parties' intent from the plain meaning of the language used. *Id.* To resolve the instant dispute, we must examine all of the language in the lease, reading the document as a whole. *See Glick v. Chocorua Forestlands Ltd. P'ship*, 157 N.H. 240, 247, 248 (2008).

Paragraph 19 of the lease provides: "In any legal action brought by either party to enforce the terms hereof or relating to the demised premises, the prevailing party shall be entitled to all costs incurred in connection with such action, including a reasonable attorney's fee." The trial court ruled

that this paragraph did not authorize the award of attorney's fees or costs related to expert witnesses. We disagree.

■ Although the lease states that, as the prevailing party, the plaintiffs are entitled to "all costs incurred," we read this language in the context of the *entire* agreement and not in isolation. *See id.* at 247. This residential lease contained an implied warranty of habitability. *See Kane v. N.H. State Liquor Comm'n,* 118 N.H. 706, 709 (1978). Additionally, under RSA 540:13-d (2007), "when a premises leased or rented for residential purposes is in substantial violation of the standards of fitness for health and safety, and the violation materially affects the habitability of the premises, the tenant has an affirmative defense to an action for possession based on non-payment of rent." *Hutchins v. Peabody,* 151 N.H. 82, 84-85 (2004). In light of the implied warranty of habitability and the statutory affirmative defense, we hold that when they were negotiating the lease, the parties could have reasonably anticipated that "all costs incurred" included necessary attorney's fees and expert witness costs related to proving habitability. *See Kline v. Burns,* 111 N.H. 87, 91 (1971) ("The importance of a lease of an apartment today is not to create a tenurial relationship between the parties, but rather, to arrange the leasing of a habitable dwelling.").

■ Here, the plaintiffs brought this action for unpaid rent in the amount of $4,200. The defendants responded, alleging mold infestation. Because a landlord has a duty to provide a habitable dwelling, the plaintiffs were entitled to defend against the defendants' allegations with expert testimony. Thus, we conclude that the trial court erred in failing to award the plaintiffs reasonable attorney's fees and costs related to expert witnesses. We, therefore, reverse the trial court's denial of any attorney's fees or costs related to expert witnesses and remand for the trial court to determine the amount of reasonable attorney's fees and costs related to such witnesses and incurred in connection with the plaintiffs' possessory action.

■ The plaintiffs contend that the trial court's award of only $1,500.00 in attorney's fees for collecting back rent was an unsustainable exercise of discretion because the trial court "failed to provide any calculations underlying its reasoning" for the award. The record on appeal does not demonstrate that the plaintiffs ever raised this issue in the trial court, however, and, therefore, it is not preserved for our review. *See Liam Hooksett, LLC v. Boynton,* 157 N.H. 625, 631 (2008). Accordingly, we affirm the trial court's award of $1,500.00 in attorney's fees for collecting back rent.

We next address the plaintiffs' arguments regarding prejudgment interest. The trial court ruled that the plaintiffs were entitled to interest at the

lease rate only for three months and declined to award lease rate interest for the period after the defendants put the plaintiffs on notice of a good faith dispute. The plaintiffs argue that they are entitled to lease rate interest on the unpaid rent and late charges for the entire period preceding judgment.

We discussed prejudgment interest in *Mast Road Grain & Building Materials Co. v. Piet*, 126 N.H. 194 (1985). In *Mast Road*, the credit agreement at issue provided that if the balance remained unpaid for thirty days after billing, the plaintiff "may then ask [debtor-defendants] to pay the entire amount then due immediately and [debtor-defendants] agree to pay all accrued finance charges *to date*, and all costs of collection, including attorney's fees." *Mast Road*, 126 N.H. at 197 (quotation omitted). We interpreted "to date" to mean that "the finance charges accrued on the date of plaintiff's demand for immediate payment of the full amount of the unpaid account." *Id.* Thus, based upon the credit agreement, the debtor-defendants were responsible for paying the 24% annual finance charge until the date of demand. *Id.* At the point of demand, however, the statutory interest rate of 10% applied. *Id.* Based upon the plain meaning of the contract, the debtor-defendant was not responsible for paying the higher interest rate after the demand. We stated: "Unless the parties have clearly provided their own interest rate for damages during the pending lawsuit to prove and collect a claimed debt, their interest damages should be determined at the statutory rate of 10% once suit is instituted." *Id.*

In *Lassonde v. Stanton*, 157 N.H. 582 (2008), the subject contract included a prejudgment interest rate higher than the statutory rate. The contract stated: " 'Final payment is due at the completion of the project. Final payment not made as agreed may result in an additional finance charge of 15%-18% per annum added to the outstanding balance.' " *Lassonde*, 157 N.H. at 593. We held that the plaintiff was entitled to at least a 15% prejudgment interest rate based upon the language of the contract. *Id.* at 594.

■ Consistent with our holdings in *Mast Road* and *Lassonde*, in determining the applicable prejudgment interest rate, we look first to the parties' contract. If the parties clearly provided an interest rate, that interest rate must be applied. If, however, the parties did not clearly articulate a prejudgment interest rate, the statutory rate applies.

Here, the lease agreement includes the following language: In the event rent is not paid within *10* days after due date, Tenant agrees to pay a late cha[r]ge of *$40.00* plus interest at *1%* per month on the delinquent amount. Tenant further agrees to pay *$40.00* for each dishonored check. The late charge period is not a grace

period, and Owner is entitled to make written demand for any rent unpaid on the second day of the rental period. Any unpaid balances remaining after termination of occupancy are subject to 1 1/2% interest per month or the maximum rate allowed by law.

██Thus, the parties here agreed that an interest rate of 1.5% per month applies "after termination of occupancy." Unlike the contract in *Mast Road*, the contract here does not limit the contract interest rate to the period prior to date of demand. Rather, the parties agreed to the specified interest rate as to any "unpaid balances." They further agreed that "unpaid balances" include rent, late charges, and dishonored check charges remaining unpaid after termination of occupancy. We therefore conclude that the trial court erred in limiting the contract interest rate to the three-month period. The plaintiffs are entitled to the contract interest rate, as the prejudgment interest rate, on the unpaid rent and late charges. We note, however, that the plaintiffs are not entitled to the contract interest rate on their other claimed damages. We reverse and remand for recalculation of the interest due the plaintiffs.

*Affirmed in part; reversed in part; and remanded.*

BRODERICK, C.J., and DALIANIS, DUGGAN and HICKS, JJ., concurred.