# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2015-0303, <u>Darlene Forshee & a. v. Joseph Brown</u>, the court on December 4, 2015, issued the following order:**

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). We affirm.

The defendant, Joseph Brown (landlord), appeals a decision of the Circuit Court (<u>Bamberger</u>, J.) following a bench trial, ruling in favor of the plaintiffs, Darlene Forshee and Jennifer Berman (tenants), on their small claim complaint seeking the return of a security deposit. In ruling for the tenants, the trial court found, in part, that there was no enforceable lease. On appeal, the landlord argues that the evidence at trial compelled findings that the parties had entered into an enforceable oral lease for a shared facility, <u>see</u> RSA 540-B:1, :2 (2007), and that the tenants failed to provide timely notice that they were terminating the tenancy, <u>see</u> RSA 540-B:4 (2007), thereby entitling the landlord to retain the security deposit to cover the tenants' unpaid rent.

We will uphold the trial court's findings and rulings unless they are unsupported by the evidence or erroneous as a matter of law. <u>See</u> <u>Vincent v. MacLean</u>, 166 N.H. 132, 134 (2014). We assume that the trial court made all subsidiary findings necessary to support its general findings. <u>See</u> <u>Nordic Inn Condo. Owners' Assoc. v. Ventullo</u>, 151 N.H. 571, 586 (2004). We defer to the trial court's judgment on issues such as resolving conflicts in the testimony, assessing the credibility of witnesses, and evaluating the weight of the evidence submitted at trial. <u>See</u> <u>Vincent</u>, 166 N.H. at 134.

The evidence at trial establishes that, in late February or early March of 2014, the parties began negotiating the rental of the upstairs of the landlord's home. The space that the tenants would rent consisted of two bedrooms, a living area, and a half bathroom; the parties would share use of the kitchen. On March 18, the landlord emailed the tenants a lease; the tenants, however, never signed a written lease. At some point in March, the tenants paid $825 for the first month's rent, and toward the end of March, they paid a security deposit of $825. The tenants moved into the landlord's home on March 31.

At 5:50 p.m. on March 31, the date that the tenants moved into the landlord's home, the landlord sent the tenants an email telling them that they would be responsible for sharing several household chores, such as washing

dishes, vacuuming common areas of the house, doing laundry, gardening, cooking meals, shopping for groceries, and providing childcare for his children. Although the tenants had agreed to assist the landlord in caring for his children under certain limited circumstances, the parties had otherwise never discussed the chores that the landlord expected them to perform. The landlord further stated that clothing was optional in the house, and that the tenants should "pay attention to site lines and avoid shocking the neighbors." As with the expected chores, the parties had never before discussed whether clothing would be "optional" in the common areas of the home.

The tenants responded to the landlord's email on April 7, advising him that they had not been aware that clothing would be "optional," and requesting that he remain clothed in their presence. The tenants further requested that neither the landlord nor his children enter the upstairs portion of the house except by invitation or to make necessary repairs. According to the tenants, the landlord's children had not been respecting their privacy, and were persistently entering the upstairs area of the house without permission.

On April 10, the landlord responded to the tenants' email, asserting that he was "not sure how clothing optional could be any source of confusion," and that he "had mentioned that as one reason that [he] wouldn't have rented [the space] to just anyone" when the parties had earlier met to discuss the possibility of a lease. Realizing that they disagreed with the landlord as to the terms of the rental agreement, the tenants began to look for a new place to live. On the morning of April 15, five days after the landlord's email claiming that the parties had discussed the clothing arrangement during their negotiations, the tenants advised the landlord that they were moving; they moved later that day. The landlord subsequently refused to return their security deposit.

RSA chapter 540-B governs the rental of "shared facilities." A "shared facility" is defined as "real property rented for residential purposes which has separate sleeping areas for each occupant and in which each occupant has access to and shares with the owner of the facility one or more significant portions of the facility in common, such as kitchen, dining area, bathroom, or bathing area, for which the occupant has no rented right of sole personal use." RSA 540-B:1, I. A verbal rental agreement is enforceable under RSA chapter 540-B, and unless otherwise provided for by a written rental agreement, every shared facility "tenancy shall be deemed to be at will." RSA 540-B:2. Absent any different notice requirement in a written rental agreement, terminating an at-will tenancy under RSA chapter 540-B requires the tenant to provide a written thirty-day notice. RSA 540-B:4 (2007). A landlord may require a security deposit, and if there is no written agreement, must return it within twenty days after the tenant has vacated the property. RSA 540-B:10 (2007).

2

In this case, the parties agree that the landlord's home constituted a "shared facility." In arguing that the trial court erred by ruling that there was "no enforceable lease," the landlord contends that, although the tenants never signed a written lease, the evidence conclusively established that there was a verbal lease, and that there was no evidence that the verbal lease was invalid, void, or unenforceable. Because the tenants failed to provide timely notice of their intent to terminate the tenancy under RSA 540-B:4, the landlord argues that they owed rent for May 2014, and that he was entitled to retain their security deposit to cover that obligation as a matter of law. We disagree.

A lease is a form of contract, governed by the standard rules of contract interpretation. Tulley v. Sheldon, 159 N.H. 269, 272 (2009). As with any contract, the formation of an enforceable lease agreement requires a meeting of the minds as to all of the essential terms of the lease. See Syncom Indus. v. Wood, 155 N.H. 73, 82 (2007). A meeting of the minds occurs when the parties assent to the same terms. Id. Whether the parties assented to the same essential terms of the lease is a question of fact to be analyzed under an objective standard. See id.

In this case, the evidence establishes that the parties did not assent to the same essential terms of the lease. Specifically, the evidence shows that the landlord assented to a lease obligating the tenants to perform a broad range of household chores, while the tenants agreed only to provide childcare under limited circumstances. Additionally, the evidence shows that the tenants' agreement to a "clothing is optional" term was critical to the landlord's assent, while the landlord's agreement to a "clothing is mandatory in our presence" term was equally critical to the tenants' assent. We note that the landlord has not provided copies of the emails that the tenants introduced at trial concerning these issues. Accordingly, we assume that the emails support the trial court's determination that there was no enforceable lease. See Bean v. Red Oak Prop. Mgmt., 151 N.H. 248, 250 (2004).

We conclude that the evidence supports a finding that the parties did not assent to the same essential terms of the lease, regardless of whether the lease was oral. Absent a meeting of the minds as to the essential terms, there was no lease, and no basis for the landlord to retain a security deposit. Under these circumstances, the trial court's finding that there was no enforceable lease, and its requirement that the landlord return the security deposit, was neither unsupported by the evidence nor erroneous as a matter of law. Vincent, 166 N.H. at 134; cf. Kowalski v. Cedars of Portsmouth Condo. Assoc., 146 N.H. 130, 133 (2001) (upholding district court's award of restitution of real estate commission where defendant was not a licensed real estate broker and, thus, lacked authority to collect commission); Kline v. Burns, 111 N.H. 87, 93 (1971) (noting that basic contract remedies, including rescission, are available to tenants in district court for landlord's breach of implied warranty).

3

To the extent that the landlord also argues that the trial court violated his right to due process, the argument was neither raised in his notice of appeal, nor sufficiently developed in his brief. <u>See</u> <u>State v. Blackmer</u>, 149 N.H. 47, 49 (2003).

<u>Affirmed</u>.

Dalianis, C.J., and Hicks, Conboy, Lynn, and Bassett, JJ., concurred.

**Eileen Fox,
Clerk**