# THE STATE OF NEW HAMPSHIRE

## SUPREME COURT

**In Case No. 2020-0258, <u>HBD Drugg Real Estate, LLC v. Celia Harkins</u>, the court on April 2, 2021, issued the following order:**

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). The defendant, Celia Harkins (tenant), appeals a decision of the Circuit Court (<u>Gleason</u>, J.) granting possession to the plaintiff, HBD Drugg Real Estate, LLC (landlord), of a lot that the tenant leased in the landlord's manufactured housing park based upon the tenant's nonpayment of rent, and awarding the landlord $1,500 plus costs. <u>See</u> RSA 205-A:9 (2019) (stating that RSA chapter 540 applies to tenancies in manufactured housing parks); RSA 540:13 (2007). On appeal, the tenant argues that, because she was not in arrears on her rent under the terms of the parties' lease as modified in resolution of prior litigation, the trial court erred by awarding judgment to the landlord. We reverse.

We will uphold the trial court's findings unless they lack evidentiary support or are erroneous as a matter of law. <u>Colonial Village v. Pelkey</u>, 157 N.H. 91, 92 (2008). We review its legal conclusions, as well as the application of law to fact, independently for plain error. <u>Id</u>. Thus, our inquiry is to determine whether the evidence presented at trial reasonably supports the trial court's findings, and whether its decision is consonant with applicable law. <u>Id</u>. We review any questions of law, including the trial court's interpretation of a lease agreement, <u>de novo</u>. <u>Id</u>.; <u>see</u> <u>Tulley v. Sheldon</u>, 159 N.H. 269, 272 (2009) (interpretation of lease is question of law subject to <u>de novo</u> review).

The tenant rents a lot in a manufactured housing park under a lease requiring that she pay monthly rent of $350. During the summer of 2019, the landlord brought an eviction against the tenant, alleging that she was $2,100 in arrears on her rent. A hearing was scheduled for September 10, 2019.

On September 9, one day before the hearing, the landlord's representative filed a motion to withdraw the complaint, asserting that the parties had "come to an agreement for payment of rent and arrearages," and that "upon the court ordering the attached payment agreement, I would like to withdraw my complaint against her." The tenant alleges that, as part of the agreement, she paid the landlord $525 on September 9. With the motion to withdraw the complaint, the landlord submitted a handwritten document, labeled an "agreement," that was signed by both the landlord's representative and the tenant. In its entirety, the document provided:

[The tenant] has agreed to pay the monthly park rent of $350.00 plus an additional $200.00 towards the arrearage each month, starting October 1, 2019, until the rent is current.

| Arrearage | – $1,950.00 |
|-----------|-------------|
| 10-1-19 | – 200.00 |
| 11-1-19 | – 200.00 |
| 12-1-19 | – 200.00 |
| 1-1-20 | – 200.00 |
| 2-1-20 | – 200.00 |
| 3-1-20 | – 200.00 |
| 4-1-20 | – 200.00 |
| 5-1-20 | – 200.00 |
| 6-1-20 | – 200.00 |
| 7-1-20 | – 150.00 |
| | $1,950.00 |

At the September 10, 2019 hearing, the trial court explained that, although the landlord's motion had requested that the trial court "order" the agreement, RSA 540:13, III, which limits money judgments in summary possession proceedings to $1,500, deprived the court of authority to order an agreement requiring the tenant to pay $1,950.[1] Nevertheless, the trial court observed that the agreement was "a binding contract, and you just act on that accordingly," and that it could simply grant the motion to withdraw the complaint, and "if somebody were to come back and say, yeah, she didn't honor the agreement, . . . we can start over." When the landlord's representative asked the trial court whether "start[ing] over" meant "starting the whole process over again," the trial court responded, "Sure . . . . And that process is, you're going to withdraw the complaint anyhow so that's happening." The trial court noted, however, that there was "a third option, . . . called agreement to stay writ of possession," see RSA 540:13-c, II (Supp. 2020), and provided the parties with a form agreement and an opportunity to examine and discuss it.

Following a brief recess, the parties explained to the trial court that they were unable to reach an agreement to stay the writ of possession. The trial court then reiterated that "the agreement between yourselves is a binding agreement, it's a binding contract," and asked the parties, "What do you two suggest for me." The landlord's representative answered, "We're going to go with the original plan, we'll stick with the agreement between us. We've done the . . . pinky swear." The trial court stated that it then would "grant your motion to withdraw the complaint." In addition to granting the motion, the

---

[1] Because the issue is not before us in this appeal, we express no opinion as whether this legal conclusion is correct.

2

trial court wrote the following on the agreement: "9-10-19 Case is dismissed. Agreement is not ripe for consideration."[2]

Thereafter, the tenant paid the landlord $550 per month for the months of October 2019, November 2019, December 2019, and January 2020. On January 17, 2020, the landlord served a demand for rent and an eviction notice upon the tenant, asserting that she owed $1,150 in rent for the period of October 1, 2019 through January 17, 2020. In February 2020, the landlord brought the present eviction action for nonpayment of rent pursuant to the January 17 demand for rent, and sought an award of $1,500 in unpaid rent pursuant to RSA 540:13, III. At the March 10, 2020 hearing on the eviction, the tenant testified that she had, in fact, fully paid rent in accordance with the September 2019 agreement for the period of time subject to the demand for rent, and submitted receipts substantiating her testimony. She explained that, in claiming that she was $1,150 in arrears, the landlord had applied all of the payments that she had made first against the $1,950 arrearage, rather than crediting $200 per month toward the arrearage and $350 per month toward current rent in accordance with the parties' agreement.[3]

When the trial court asked the landlord's representative for his response to this testimony, he did not dispute that the tenant had paid $550 per month during the relevant time frame. Instead, he asserted that the parties' agreement "was predicated on it being ordered by the Court," and that, because "there was no ratification of any agreement," the agreement was unenforceable. He further asserted that "[t]he first two payments" that the tenant had made "were late," that "the last payment was received on January 2nd," rather than January 1, that the tenant had not paid rent since January 2, and that the tenant, at that point, owed a total of $1,850 in back rent. When the trial court asked the tenant about the February and March rent payments, she agreed that she had not made those payments, but asserted that they were outside the scope of the demand for rent and the eviction notice. The tenant disputed the landlord's assertion that she owed $1,850 in back rent.[4]

---

[2] The trial court had explained to the parties earlier in the hearing that, if it granted the motion to withdraw the complaint, it would "have no authority to approve your agreement because there's no complaint" before it. We understand the trial court's comment that the agreement was "not ripe for consideration," therefore, to mean that, because the case had been dismissed, there was no agreement before it upon which to act.

[3] The tenant paid a total of $2,200 between October 2019 and January 2020. The tenant's total rent obligation for this same period was $1,400. Crediting all of the $2,200 that the tenant had paid first against the $1,950 arrearage would mean that she had paid only $250 in rent for that period of time ($2,200 - $1,950 = $250). Subtracting $250 from the $1,400 total rent obligation would result in an arrearage of $1,150, the precise amount that the landlord claimed was due in the demand for rent.

[4] It appears that the landlord's assertion that the tenant owed a total of $1,850 was based upon its claim that the tenant owed $1,150 in rent from October 1, 2019 through January 17, 2020, a claim the tenant disputed, and its claim that she had not paid $350 per month in rent for February and March 2020, a claim she did not dispute.

The trial court granted the eviction and awarded the landlord judgment in the amount of $1,500. Because the tenant had represented, however, that she intended to sell the property, the trial court granted her "a discretionary extension of 60 days . . . from this date to issue the writ of possession on condition that [the tenant] resume the rent and arrearage payments that you two agreed to back on September 9th" in accordance with RSA 540:13-c, I. When the landlord expressed confusion as to "what agreement . . . that we're sticking to," the trial court responded by stating that "[t]hat agreement lays out a monthly payment and 200 dollars towards the arrearage," and that "if [the tenant] resumes doing that, . . . she has a 60-day extension on the writ of possession. It will issue 60 days from today." The tenant moved for reconsideration, arguing, among other things, that she had paid the full amount owed under the September 2019 agreement with respect to the time frame covered by the demand for rent and eviction notice, and that because the landlord had not strictly complied with RSA chapter 540, it was not entitled to possession. The trial court denied the motion, and this appeal followed.

Because RSA chapter 540 establishes rights and benefits to which a landlord was not entitled at common law, strict compliance with its terms is required. Buatti v. Prentice, 162 N.H. 228, 230 (2011). The burden is on the landlord to prove strict compliance with the statute. Id. Part of satisfying that burden in this case was to establish that the landlord, in compliance with RSA 540:8 (2007), did not demand a sum that was greater than the whole rent in arrears at the time that the demand was made. Id.

The tenant argues that the September 2019 agreement effectively modified the parties' lease by requiring that she pay, in addition to monthly rent, $200 per month from October 2019 through June 2020 and $150 in the month of July 2020 toward the rent arrearage. The fact that the trial court conditioned the stay of the writ of possession upon the tenant's resumption of the rent and arrearage payments under the agreement, the tenant contends, implies that it also found that the agreement modified the parties' lease. Because the tenant was not in arrears under the lease as modified when the landlord served the demand for rent and eviction notice, and because the scope of the demand for rent did not include unpaid rent and arrearage payments for February and March 2020, the tenant argues that the trial court necessarily erred by awarding the landlord possession. The landlord counters that the agreement did not modify the lease. The landlord further counters that the agreement was unenforceable because it was inconsistent with RSA 540:13-c, II, because the trial court did not approve it, and because the parties did not have a "meeting of the minds" as to its impact on a future eviction. Finally, the landlord argues that, because the tenant was in material breach of the agreement, she was not entitled to its benefits.

At the outset, we note that several of the landlord's arguments respond to issues that the tenant neither raised in the trial court nor raises on appeal.

Specifically, the tenant did not argue below, and does not argue on appeal, that the agreement was an agreement to defer a writ of possession for purposes of RSA 540:13-c, II, or that it was an agreement to bar future eviction based upon nonpayment of the arrearage. Nor did she raise the agreement as an "affirmative defense" to eviction. Rather, the tenant argued that, because the agreement defined her rent obligation for the time frame from October 1, 2019 through January 17, 2020, and because she had made all payments required under the agreement for that time frame, she could not be found to have been in arrears for purposes of RSA 540:8. We agree.

A lease is a form of contract that we construe in accordance with the ordinary rules of contract interpretation. Tulley, 159 N.H. at 272. Absent ambiguity, we generally determine the parties' intent from the plain meaning of language used in a written agreement, reading the document as a whole and considering the circumstances and context in which it was negotiated. Id.; Behrens v. S.P. Constr. Co., 153 N.H. 498, 503 (2006). When, however, the parties do not intend a writing to constitute a complete expression of their agreement, extrinsic evidence may be considered to prove terms or conditions not expressed in the writing that are not inconsistent with it. See Behrens, 153 N.H. at 504; Parkhurst v. Gibson (Parkhurst), 133 N.H. 57, 62 (1990); Lapierre v. Cabral, 122 N.H. 301, 306 (1982). Disputes as to the existence and terms of a contract, including whether parties to a contract have entered into a modification of it, are questions of fact to be determined by the trier of fact. See Syncom Indus. v. Wood, 155 N.H. 73, 82 (2007); C & M Realty Trust v. Wiedenkeller, 133 N.H. 470, 477 (1990). We review agreements resolving civil litigation mindful of the strong public policy favoring the private settlement of civil disputes. Hogan Family Enters. v. Town of Rye, 157 N.H. 453, 456 (2008).

We agree with the tenant that the trial court's decision to stay the writ of possession conditioned upon her resumption of "the rent and arrearage payments that you two agreed to back on September 9th" implies a finding that the September 2019 agreement modified the parties' lease. RSA 540:13-c, I, grants the trial court discretion to defer issuance of a writ of possession for no more than three months, but requires the tenant to "pay the landlord weekly in advance the weekly former rent, or proportional weekly part of the former rent if rent was payable less often than weekly." By conditioning the stay of the writ of possession upon the tenant's resumption of both rent and rent arrearage payments under the September 2019 agreement, therefore, the trial court necessarily determined that the September 2019 agreement, and not the lease agreement alone, defined "the former rent" that the tenant was obligated to pay. Evidence in the record supports this determination.

The September 2019 agreement, by its unambiguous language, reflects the parties' intent that the tenant pay off the prior rent arrearage in nine

monthly payments, over and above her current rent, of $200, and one payment of $150.  The landlord's motion to withdraw the complaint, and the parties' representations at the September 10, 2019 hearing, further reflect the parties' intent that the landlord waive its right to evict the tenant, at that time, for her nonpayment of $1,950, and that the tenancy continue based upon the tenant's promise to repay the $1,950, in addition to monthly rent, over the ten-month period.  The effect of this agreement was to modify both the tenant's obligation under the lease to pay only $350 per month in rent during the timeframe governed by the agreement, and any right the landlord may have had to terminate the lease and evict the tenant based upon her prior default.  Although the landlord contends that the agreement was conditioned upon the trial court "approving" it, the trial court specifically told the parties that it would not issue an order approving the agreement, and after asking the parties how they wished to proceed, and after twice explaining that the agreement was still enforceable, the landlord's representative expressly confirmed that he would "go with the original plan, we'll stick with the agreement between us."

We conclude that the September 2019 agreement was an enforceable modification of the parties' lease, and governed whether, and by what amount, the tenant was "in arrears" for purposes of RSA 540:8.[5]  Accordingly, it was the landlord's burden at trial to prove that, as of January 17, 2020, when it served the demand for rent, the tenant was in arrears under the lease as modified by the September 2019 agreement by at least $1,150, the amount demanded.  See Buatti, 162 N.H. at 230.  At trial, the landlord did not dispute that, as required by the September 2019 agreement, the tenant had in fact paid $550 per month for the months of October 2019, November 2019, December 2019, and January 2020, the same timeframe governed by the demand for rent.  Rather, the landlord claimed only that three of those payments were not received on or before the first of the month, and that the tenant had not paid rent in February or March, after it had served the demand for rent and eviction notice.[6]  Under these circumstances, the evidence compelled a finding that the tenant had an

---

[5] Because the agreement was not an agreement to stay the issuance of a writ of possession "in spite of judgment for the plaintiff," RSA 540:13-c, II, the fact that it did not comply with RSA 540:13-c, II is irrelevant.  Nor does the agreement contain any provision waiving any of the tenant's rights under RSA chapter 540.  See RSA 540:28 (2007); Mountain View Park, LLC v. Robson, 168 N.H. 117, 120-21 (2015).

[6] To the extent the landlord is arguing that these facts establish that the tenant was in material breach of the contract, we note that this case was brought as a possessory action under RSA 540:13, not a claim for damages for breach of contract.  Accordingly, the landlord's burden was to prove strict compliance with the statute.  See Buatti, 162 N.H. at 230.

arrearage of $0 as of January 17, 2020, and the trial court erred by awarding possession and $1,500 plus costs to the landlord.[7]  See id. at 230-31.

Reversed.

MacDonald, C.J., and Hicks, Bassett, Hantz Marconi, and Donovan, JJ., concurred.

**Timothy A. Gudas,**
**Clerk**

---

[7] To the extent the landlord argues that the tenant's failure to separately appeal the $1,500 judgment amounts to a waiver or estoppel of her arguments on appeal, a money judgment is only available to the landlord under RSA 540:13, III to the extent that the trial court "finds that the landlord is entitled to possession on the ground of nonpayment of rent."  Here, the tenant correctly argued, both in the trial court and on appeal, that the landlord was not entitled to possession because there was no arrearage under the September 2019 agreement as of January 17, 2020.  Thus, the landlord was not entitled to any money judgment, and the fact that the tenant did not separately appeal the $1,500 judgment does not amount to a waiver or estoppel of her arguments on appeal.