# THE STATE OF NEW HAMPSHIRE

## SUPREME COURT


**In Case No. 2023-0088, <u>TJN, Inc. v. Abigail Mathes Pitou</u>, the court on October 9, 2024, issued the following order:**


The court has reviewed the written arguments and the record submitted on appeal, has considered the oral arguments of the parties, and has determined to resolve the case by way of this order.  <u>See</u> <u>Sup. Ct. R.</u> 20(2).  The defendant, Abigail Mathes Pitou, appeals a jury verdict, damages award, and award of attorney's fees rendered in favor of the plaintiff, TJN, Inc. (TJN), after a trial in Superior Court (<u>Ruoff</u>, J.).  We affirm.

The jury could have found the following facts.  Timothy Noonan is a building contractor who started his own business, which he later incorporated as TJN.  On March 28, 2021, TJN entered into a contract with Pitou to complete work on a residential building and renovation project in Exeter that had been started by another contractor.  The contract was a "bid" or "lump sum" contract, which set forth a total price to complete the project according to the contract's specifications.  Over the course of construction, the parties also executed a number of change orders, altering or adding to the specifications and adjusting the contract price accordingly.

The contract specified that billing would be on "30 day terms" as work progressed, with payment due "within five days upon receipt."  TJN sent progress invoices to Pitou in April and June, both of which she paid.  In addition, change orders in June, July, and August generated additional charges that Pitou paid.

The project began to stall, however, as Noonan waited to get decisions from Pitou on items such as interior finish and trim selections and as he waited for Pitou to furnish materials she had agreed to supply.  Noonan testified that he had "emailed [Pitou] for close to two months a list of items that we needed."  As of August 25, Noonan still had not received the requested information, and the project was at a standstill with no work for his workers to perform.

Issues also arose as to code compliance.  Accordingly, Noonan requested that he and Pitou meet with the building inspector onsite to get clarification on those issues.  Noonan and Pitou met the building inspector at the jobsite on August 26.  Also present were Don Provost, general manager at TJN, and Pitou's friend, Robert Woods, to whom she had given power of attorney to

oversee construction on the project. After the code issues had been resolved, the building inspector left and the others stayed to discuss the list of items awaiting answers from Pitou. Noonan testified that Pitou was frustrated with the way one of the code issues had been resolved and threatened to "drag [his] name through the mud." Offended, Noonan said, "I'm leaving, I'm out of here," and left the site.

Shortly thereafter, Woods called Noonan and informed him that he was taking over the project as general contractor and Noonan was not to return. TJN issued a third progress invoice, in the total amount of $48,396, on August 31. In a letter dated September 14, counsel for TJN told the building inspector that TJN "has terminated a contract at [Pitou's] site" and that a successor contractor would have to reapply for building permits.

TJN brought the instant action alleging breach of contract and unjust enrichment. The complaint, which was dated September 1, 2021, sought judgment in the amount of $48,396 as well as attorney's fees, costs, and interest under a provision of the contract. Pitou counterclaimed, alleging breach of contract, misrepresentation, set off, and unjust enrichment.

Following a seven-day trial, the jury was instructed that both parties claimed breach of contract by the other. The jury returned a verdict finding that TJN proved its claim and proved damages in the amount of $48,396. The jury further found that Pitou did not prove her breach of contract claim. Pitou filed two motions, on alternative grounds, to set aside the jury's verdict on breach of contract and a third motion to set aside the damages award. The court denied all three motions. TJN filed a motion for attorney's fees, which the court granted over Pitou's objection. This appeal followed.

Pitou first contends that the trial court erred in failing to set aside the jury's verdict as conclusively against the weight of the evidence. "Conclusively against the weight of the evidence means that the verdict was one no reasonable jury could return." Mortgage Specialists v. Davey, 153 N.H. 764, 771 (2006) (quotation omitted). We review a trial court's denial of a motion to set aside a jury verdict for an unsustainable exercise of discretion. Id.

Pitou argues that the jury's verdict was conclusively against the weight of the evidence because TJN's admissions "through its general manager['s trial testimony] and its attorney's [September 14] letter to the Town of Exeter conclusively demonstrate that [TJN], not [Pitou,] terminated the parties' construction agreement on August 26, 2021" when he walked off the job. Specifically, Provost testified to his belief, "[b]ased on the way the discussion and [August 26] meeting finished," that Noonan was terminating the contract.

2

We are not persuaded that the verdict was conclusively against the weight of the evidence. The evidence at trial was conflicting, and the jury was free to credit Noonan's testimony that he left the jobsite on August 26 to end an argument with Pitou and not to terminate the contract. See Akwa Vista v. NRT, 160 N.H. 594, 603 (2010) (noting that the jury is "free to accept or reject conflicting evidence and to determine the weight and credence to give evidence"). Similarly, the jury was free to reject both Provost's testimony and Pitou's interpretation of the September 14 letter. See id. Accordingly, we reject Pitou's argument that the jury's verdict was conclusively against the weight of the evidence and find that the trial court did not unsustainably exercise its discretion in denying Pitou's motion to set aside the verdict.

Pitou next argues that the damages award is unsupported by the evidence because a $4,500 charge related to constructing a screen porch had already been paid and the amount charged for interior and exterior painting was not supported by subcontractor invoices. "On review, we consider the evidence in the light most favorable to the prevailing [party] below, and will overturn a damage award only if we find it to be clearly erroneous." Bailey v. Sommovigo, 137 N.H. 526, 530 (1993).

With respect to the screen porch, the jury heard evidence that the parties executed a $4,500 change order to move the location of a deck and upgrade it to a 12-foot by 12-foot screen room. Noonan testified that the total cost of the upgraded screen room was $16,560 and that Pitou was given a $6,900 credit for the 6-foot by 10-foot structure originally contemplated. Pitou was invoiced for, and paid, the $4,500 change order. Noonan testified that the $4,500 billed on August 31 for "[l]abor and materials, frame to finish screen room" was not a duplicate billing of the $4,500 change order Pitou had already paid, but reflected progressive billing for the upgraded screen room, which was then complete except for the finish paint. The jury could have credited this testimony. See Akwa Vista, 160 N.H. at 603.

With respect to painting, the August 31 invoice charged $6,800 for "[i]nterior painting including, interior primer, first coat finish walls, finish coat ceilings, materials and labor," and $16,500 for "[e]xterior paint and trim 80% complete." Pitou notes that TJN submitted only one subcontractor invoice, in the amount of $7,500 for exterior painting, and argues that if she "was required to reimburse [TJN] for its labor and costs incurred prior to the alleged breach, then [TJN] was obligated to produce evidence it had actually paid those costs."

We reject the contention that the absence of additional subcontractor invoices rendered the evidence insufficient to prove TJN's damages. "New Hampshire law . . . does not require that damages be calculated with mathematical certainty, and the method used to compute them need not be

more than an approximation." George v. Al Hoyt & Sons, Inc., 162 N.H. 123, 134, 135 (2011) (concluding, based on plaintiff's testimony, that there was evidence in the record from which jury could have determined amount of lost profits damages). There was testimony at trial about the painting work that had been done and the value of that work. We conclude that Pitou has failed to show that the damages award was clearly erroneous.

Finally, Pitou argues that the trial court erred in awarding TJN attorney's fees because it misunderstood the applicable provision of the contract. The contract provides, in relevant part:

> **Payment terms:** As work progresses billing 30 day terms, payments within five days upon receipt.

> **Proposal Acceptance:** . . . Payments are due upon receipt. Any and all invoices not paid when due shall incur interest at a rate of 2% per month, compounded monthly. Any cost of collection including reasonable attorney fees whether suit is filed or not, shall be added to the amount due with interest, until all sums are paid in full. Post [judgment] interest shall accrue.

"A prevailing party may be awarded attorney's fees when that recovery is authorized by statute, an agreement between the parties, or an established judicial exception to the general rule that precludes recovery of such fees." Tulley v. Sheldon, 159 N.H. 269, 272 (2009) (quotation omitted). Here, the fees were awarded under a provision of the parties' contract and the issue on appeal is the proper interpretation of that provision. Because the interpretation of a contract is ultimately a question of law for this court to determine, we review the trial court's interpretation of the attorney's fees provision de novo. See id. We review the court's award of attorney's fees for an unsustainable exercise of discretion. Id.

In interpreting the fee provision, "[w]e will give the language used by the parties its common meaning as understood by reasonable people and, in the absence of ambiguity, we will determine the parties' intent from the plain meaning of the language used." Id. We "examine all of the language in the [contract], reading the document as a whole." Id.

Pitou argues that the trial court erred by "functionally interpret[ing] the fees provision as if it were a 'prevailing party' clause." She contends that the provision was not intended to apply in a suit, like the instant one, for breach of contract, but rather, was intended to apply only in a collection action. She further contends that the instant suit was not a collection action — meaning an action to collect money due and owing — because the complaint is dated September 1, fewer than five days after the August 31 invoice. She argues,

based on the five-day payment terms, that her payment was not yet due at the time suit was filed.

Even assuming, without deciding, that the provision applies only to a "collection action" as Pitou uses that term, we construe this action as one for collection notwithstanding the timing of filing suit. TJN did not seek the full amount of its expectation damages for breach of contract, but rather sought, and was awarded, only the amount it invoiced on August 31. The complaint alleged that $48,396 was "due and owing for contracted work and approved written change orders" and that Pitou had "an obligation to pay [for] work in progress within five (5) days." The complaint further alleged that "[t]he last date of service was August 23, 2021," apparently considering the five-day period to start from that date.

That Pitou construes the contract to allow five days from receipt of the invoice to make payment does not change the nature of the action. If Pitou believed TJN filed suit prematurely, she could have moved to dismiss. Had the trial court agreed with Pitou's contract interpretation, the remedy would have been dismissal without prejudice to TJN's ability to refile if Pitou failed to make payment. Cf. Brinson v. Whittico, 793 S.W.2d 632, 633 (Mo. Ct. App. 1990) ("Filing a suit prematurely should not prevent a plaintiff from proceeding with an action when it becomes ripe. Thus, if an action is deemed premature and a trial court dismisses it for that reason, the action should be dismissed without prejudice."). Noonan testified at trial that the invoice was still unpaid. We therefore conclude that this was a collection action. Furthermore, to the extent Pitou contends that TJN cannot enforce the interest provision of the contract because TJN filed suit before payment was due, that argument also fails for the foregoing reasons.

Finally, Pitou argues that the attorney's fees provision should not be enforced because this was an "honest dispute over a breach of contract" in which she "asserted her own good faith counterclaims." She relies upon Fletcher Hill, Inc. v. Crosbie, 872 A.2d 292 (Vt. 2005), for support. Because that case is decided under a Vermont statute, however, we find it neither applicable nor persuasive. See Fletcher Hill, Inc., 872 A.2d at 295.

Affirmed.

DONOVAN and COUNTWAY, JJ., concurred; NADEAU, J., retired superior court chief justice, specially assigned under RSA 490:3, II, concurred; HANTZ MARCONI, J., sat for oral argument but did not participate in the final vote.

**Timothy A. Gudas,**
**Clerk**

5