ECHO CONSULTING SERVICES, INC.

v.

NORTH CONWAY BANK

December 28, 1995

*Burns, Bryant, Hinchey, Cox & Schulte, P.A.*, of Dover (*James H. Schulte* on the brief and orally), for the plaintiff.

*McLane, Graf, Raulerson & Middleton, P.A.*, of Manchester (*Arthur G. Greene* and *Michael J. Quinn* on the brief, and *Mr. Quinn* orally), for the defendant.

BROCK, C.J. The plaintiff, Echo Consulting Services, Inc. (Echo), sued its landlord, North Conway Bank (the bank), claiming constructive eviction, partial actual eviction, breach of an implied covenant of quiet enjoyment, and breach of the lease. Echo appeals the decision of the Superior Court (*Fitzgerald*, J.) denying all of Echo's claims after a bench trial. We affirm in part, reverse in part, and remand.

Pursuant to a written lease dated March 15, 1986, Echo leased premises on the downstairs floor of a building in Conway, together with "common right of access" thereto. When the bank purchased the building from Echo's prior landlord, it assumed the lease and became Echo's landlord.

The bank undertook a series of renovations to make the building suitable for a branch banking business on the main, street-level floor. These renovations, occurring on and off through 1987, created noise, dirt, and occasional interruptions of electric service. The construction work also made the rear parking lot inaccessible. During most of 1987, therefore, many of Echo's employees used the street-level parking lot in front of the building; they gained access to Echo's downstairs office by first using the main, street-level access to the building and then walking downstairs. On October 13, the bank changed the locks on the main floor access door for security reasons, and Echo's employees were no longer able to get in or out of the building through that door after regular business hours. At that point, Echo's only means of access after hours was through the rear door, and Echo presented testimony that even that access was obstructed and difficult at times. The parties disagree as to the extent of these interferences, and as to the damage that they caused to Echo's permissible uses of its leasehold.

On appeal, Echo argues that the trial court erred by: (1) confusing the legal standards for constructive eviction and partial actual eviction; (2) finding that locking the street-level access doors did not constitute a partial actual eviction; (3) ruling that there was no

constructive eviction; and (4) applying the wrong legal standard to determine the quiet enjoyment issue.

This case involves a commercial, as distinguished from a residential, lease. Since we have not addressed in the commercial context all of the issues raised here, we will draw some insight from residential lease cases, even though the applicable law may be more protective in the residential context. *Compare Golub v. Colby*, 120 N.H. 535, 536, 419 A.2d 397, 398 (1980) *with Kline v. Burns*, 111 N.H. 87, 92, 276 A.2d 248, 251 (1971).

In any lease, along with the tenant's possessory interest, the law implies a covenant of quiet enjoyment, which obligates the landlord to refrain from interferences with the tenant's possession during the tenancy. *See generally* 2 R. POWELL, POWELL ON REAL PROPERTY ¶¶ 231[2], 232[1] (1994). There are several ways in which a landlord might breach that covenant, each giving rise to a different claim by the tenant. The landlord's actual physical dispossession of the tenant from the leased premises constitutes an actual eviction, either total or partial, as well as a breach of the covenant. *Id.* ¶ 231[2]. "Interferences by the landlord that fall short of a physical exclusion but that nevertheless substantially interfere with the tenant's enjoyment of the premises, causing the tenant to vacate, are actionable by the tenant as 'constructive' evictions." *Id.* ¶ 232[1], at 16B-27. The landlord's general breach of the covenant of quiet enjoyment, even if not "substantial" enough to constitute a constructive eviction, nevertheless entitles the tenant to damages. *Id.* ¶ 232[1], at 16B-32 to 16B-33. We turn now to addressing each of Echo's claims separately.

*I. Partial Actual Eviction*

A partial actual eviction occurs when the landlord deprives the tenant of physical possession of some portion of the leased property, including denial of access to the leased premises. *See Barash v. Pennsylvania Terminal Real Estate Corp.*, 256 N.E.2d 707, 709 (N.Y. 1970); RESTATEMENT (SECOND) OF PROPERTY § 6.1 reporter's note 2, at 236 (1976); 2 POWELL, *supra* ¶ 231[2][b], at 16B-24. A landlord cannot apportion a tenant's rights under a lease. *See Barash*, 256 N.E.2d at 710; *Smith v. McEnany*, 48 N.E. 781 (Mass. 1897). Thus, the bank cannot apportion Echo's rights to choose which door to enter *if* the lease gives Echo a *right* to two different doors for access.

Echo, however, was not physically deprived of any portion of the property leased to it, nor of any appurtenant rights given to it under

the lease. For its claim of partial actual eviction, Echo relies on the following language in the lease: "approximately 1,890 square feet of floor area, together with common right of access thereto, a common use of the parking lot." Echo argues that this language gives it a right of access through the main, street-level door, since that door is the only door that was *actually used* in common by both the bank and Echo. We disagree.

A lease is a form of contract that is construed in accordance with the standard rules of contract interpretation. *LaPonsie v. Kumerek*, 122 N.H. 1021, 1022, 453 A.2d 1294, 1294 (1982). When construing disputed provisions in a lease, we must analyze the entire document to determine the meaning intended by the parties. *ELCA of New Hampshire, Inc. v. McIntyre*, 129 N.H. 114, 116, 523 A.2d 90, 91 (1987). Language used by the parties to the agreement should be given its standard meaning as understood by reasonable people. *Murphy v. Doll-Mar, Inc.*, 120 N.H. 610, 611-12, 419 A.2d 1106, 1108 (1980). In the absence of ambiguity, the intent of the parties to a lease is to be determined from the plain meaning of the language used. *Mast Road Grain & Bldg. v. Ray Piet, Inc.*, 126 N.H. 194, 197, 489 A.2d 143, 145 (1985). "The meaning of a contract is ultimately a matter of law for this court to decide, including the determination whether a contract term is ambiguous." *Walsh v. Young*, 139 N.H. 693, 695, 660 A.2d 1139, 1141 (1995) (quotation omitted).

■■ The word "common" in Echo's lease modifies the phrase "right of access." Thus it plainly means only that the tenant's right to access is not an exclusive right; it is in "common" with the landlord's. The lease is not ambiguous; it cannot reasonably be construed to afford Echo the right in "common" to use the street-level door simply because that is the door which the bank chose *actually* to use. We interpret the trial court's finding that "Echo employees had access to their offices through at least one door at all times" to be a determination that such access was reasonable. That is all that is required under the language of this lease.

The trial court apparently applied the standard for constructive eviction in ruling on the actual eviction claim. Even though this was error, we affirm its decision on this issue because it reached the correct result and there are valid alternative grounds to reach that result. *See In re Trailer and Plumbing Supplies*, 133 N.H. 432, 438, 578 A.2d 343, 346 (1990). Since Echo was not physically deprived of any portion of the premises to which it had a right under the lease, the partial actual eviction claim was properly denied.

## II. Constructive Eviction

A constructive eviction is similar to a partial actual eviction except that no actual physical deprivation takes place. A constructive eviction occurs when the landlord so deprives the tenant of the beneficial use or enjoyment of the property that the action is tantamount to depriving the tenant of physical possession. *Barash*, 256 N.E.2d at 710; RESTATEMENT (SECOND) OF PROPERTY, *supra*; 2 Powell, *supra* ¶ 232[1], at 16B-27.

■ The bank argues that a constructive eviction claim will not lie unless the landlord *intends* that its actions (1) render the premises unfit for occupancy or (2) permanently interfere with the tenant's beneficial use or enjoyment of the premises. We disagree. It is well established that "the landlord's conduct, and not his intentions, is controlling." *Blackett v. Olanoff*, 358 N.E.2d 817, 819 (Mass. 1977); *cf.* RESTATEMENT (SECOND) OF PROPERTY § 6.1 (1976 & Supp. 1995) (not mentioning any requirement that the landlord intend to evict the tenant). The bank mistakenly relies on one prior case to support its view that intent is required for a constructive eviction. *See Thompson v. Poirier*, 120 N.H. 584, 420 A.2d 297 (1980). Although *Thompson* contains allegations of intentional conduct on the landlord's part, intent was not a necessary element of our decision, and the prevailing view is to the contrary. For example, even though no intent was or could have been found, courts have found a constructive eviction where a nuisance outside the leased premises — such as excessive noise from neighboring tenants — was attributable to, though not affirmatively undertaken by, the landlord. *See, e.g., Blackett*, 358 N.E.2d at 819; *Gottdiener v. Mailhot*, 431 A.2d 851, 854 (N.J. Super. Ct. App. Div. 1981).

■ The focus of the inquiry in a constructive eviction case is not on intent but on the *extent* of the interference, *i.e.*, whether, in the factual circumstances of the case, the interference is substantial enough that it is tantamount to depriving the tenant of physical possession. *See, e.g., Baley & Selover v. All Am. Van & Storage*, 632 P.2d 723, 724 (Nev. 1981); *Reste Realty Corp. v. Cooper*, 251 A.2d 268, 274-75 (N.J. 1969); *see also* 2 POWELL, *supra* ¶ 232[1], at 16B-27; RESTATEMENT (SECOND) OF PROPERTY, *supra*. The law regarding this substantiality requirement has moved over the years "in the direction of an increase in the landlord's responsibilities." 2 POWELL, *supra* ¶ 232[1], at 16B-27. Even without any affirmative activity on the landlord's part, courts have found a constructive eviction where the landlord fails to perform a lease covenant, fails

to perform statutory obligations, or fails to perform a duty that is implied from the circumstances. *Sierad v. Lilly*, 22 Cal. Rptr. 580, 583 (Ct. App. 1952) (deprivation of use of parking space impliedly included in the lease); *Cherberg v. Peoples Nat. Bank of Washington*, 564 P.2d 1137, 1142 (Wash. 1977) (landlord's failure to repair outside wall rendering it unsafe); *see* 2 POWELL, *supra* ¶ 232[1], at 16B-29 to 16B-30.

■ As we held in connection with the partial actual eviction claim, the lease here did not grant Echo a right to use the particular door of its choosing. The lease provision was satisfied since, as the trial court found, Echo employees had access to their offices through at least one door at all times. Likewise, the trial court found "the interruptions and noise [from construction activities] were intermittent and temporary and did not substantially interfere or deprive Echo of the use of the premises."

There was conflicting testimony on these points, but the credibility of witnesses and the weight to be given to testimony are questions of fact for the trial court to resolve. *Johnson v. Nash*, 131 N.H. 731, 734, 559 A.2d 842, 844 (1989); *Rancourt v. Town of Barnstead*, 129 N.H. 45, 50, 523 A.2d 55, 59 (1986). We will not disturb the trial court's findings of fact on the constructive eviction issue since the evidence in the record was sufficient to support its conclusion. *Cf. Rancourt*, 129 N.H. at 50, 523 A.2d at 59.

### III. The Covenant of Quiet Enjoyment

A breach of the covenant of quiet enjoyment occurs when the landlord substantially interferes with the tenant's beneficial use or enjoyment of the premises. 2 POWELL, *supra* ¶ 232[1], at 16B-27. Even if not substantial enough to rise to the level of a constructive eviction, *see Reste*, 251 A.2d at 274-75, such interference may constitute a breach of the covenant of quiet enjoyment entitling the tenant to damages. *Carner v. Shapiro*, 106 So. 2d 87, 89 (Fla. Dist. Ct. App. 1958); *see* RESTATEMENT (SECOND) OF PROPERTY § 5 (changes in the physical condition of the premises which make them unsuitable for the use contemplated by the parties), § 6 (conduct by the landlord, or by a third party under the landlord's control, which interferes with the tenant's permissible use of the premises); 2 POWELL, *supra* ¶ 232[1], at 16B-27.

■ The trial court concluded that quiet enjoyment only protects a tenant's possession against repossession by the landlord or one claiming title superior to the landlord. Although our prior cases

have not addressed any other basis for a claim that the covenant of quiet enjoyment has been breached, they have not rejected such a claim either. *See Van Hooijdonk v. Langley*, 111 N.H. 32, 274 A.2d 798 (1971); *Russell v. Fabyan*, 27 N.H. 529, 537-38 (1853). We do not believe such a view of the covenant of quiet enjoyment constitutes good law today; many other courts have extended the covenant beyond mere denial of actual possession. *Pollock v. Morelli*, 369 A.2d 458, 461 n.1 (Pa. Super. Ct. 1976); *see* RESTATEMENT (SECOND) OF PROPERTY §§ 5-6; 2 POWELL, *supra* ¶ 232[1], at 16B-29.

■ When reasons of public policy dictate, "[c]ourts have a duty to reappraise old doctrines in the light of the facts and values of contemporary life—particularly old common law doctrines which the courts themselves created and developed." *Kline v. Burns*, 111 N.H. 87, 91, 276 A.2d 248, 251 (1971) (quotation omitted). Our society has evolved considerably since the tenurial system of property law was created by the courts. The complexities, interconnectedness, and sheer density of modern society create many more ways in which a landlord or his agents may potentially interfere with a tenant's use and enjoyment of leased premises. Even without rising to the level of a constructive eviction and requiring the tenant to vacate the premises, such interferences may deprive the tenant of expectations under the lease and reduce the value of the lease, requiring in fairness an award of compensatory damages. Moreover, under modern business conditions, there is "no reason why a lessee, after establishing itself on the leased premises, should be forced to await eviction by the lessor or surrender the premises, often at great loss, before claiming a breach of the covenant for interference with the use and possession of the premises" that is not substantial enough to rise to the level of a total eviction. *Tenn-Tex Properties v. Brownell-Electro, Inc.*, 778 S.W.2d 423, 428 (Tenn. 1989) (quotation omitted). Likewise, the landlord's greater level of knowledge of and control over the leased premises and the surrounding property militates in favor of a more modern view of the covenant of quiet enjoyment than the trial court adopted. *See Kline*, 111 N.H. at 92, 276 A.2d at 251.

Since the trial court understandably, but erroneously, believed the implied covenant of quiet enjoyment protected only Echo's possession of the property, the court did not consider Echo's claim that the bank's construction activities breached the covenant by depriving Echo of the beneficial use of the premises. There was conflicting testimony as to whether such a breach occurred, and, if so, the damages caused thereby. These are questions of fact for the trial court to determine in the first instance. *See Gibson v. LaClair*, 135

N.H. 129, 133, 600 A.2d 455, 458 (1991). Accordingly, we reverse the trial court's conclusion on this issue and remand the quiet enjoyment claim for further proceedings consistent with this opinion.

We note, however, that our holding as to the definition of a covenant of quiet enjoyment effects a change in the common law in New Hampshire, and that others might have relied on the view of the covenant that our older cases had set forth. We decline, therefore, to make this change retroactive. Instead, for anyone who is not a party to the instant action, we will only apply this new interpretation prospectively.

*Affirmed in part; reversed in part; remanded.*

BRODERICK, J., did not sit; the others concurred.