Nashua District Court
No. 2003-807

MANSFIELD ADAMS, JR.

v.

WOODLANDS OF NASHUA

Argued: November 9, 2004
Opinion Issued: January 7, 2005

*Mansfield Adams, Jr., pro se,* filed no brief.

*Cronin & Bisson, P.C.,* of Manchester (*John G. Cronin* and *John F. Bisson* on the brief, and *Mr. Cronin* orally), for the defendant.

DALIANIS, J. The defendant, Woodlands of Nashua, appeals from a ruling of the Nashua District Court (*Ryan,* J.) awarding the plaintiff, Mansfield Adams, Jr., $26,000 in liquidated damages, *see* RSA 540-A:4, IX (1997) (amended 2003), for willfully violating the plaintiff's right to quiet enjoyment of his tenancy. We reverse.

The record reflects the following facts. The plaintiff, who has two young children, has lived in a twenty-four unit building in the defendant's apartment complex since November 2002. Prior to that, a roach problem had existed at the property, and the defendant had hired a professional pest control service to treat the entire building for roaches. Though the problem had existed before the plaintiff moved into the building, he was not made aware of the problem at the time he signed his lease, and did not become aware of the problem until he received a notice in February 2003 stating that the pest control service would be performing an inspection and to contact the property manager if any activity was noticed. The plaintiff reported seeing a roach on March 11, 2003, and an appointment was scheduled for March 19, 2003, at which time the pest control service treated his apartment.

Two months later, the plaintiff reported that the apartment was again infested by roaches. The defendant notified the pest control service, which returned on May 20, 2003, to perform the same procedure it had previously performed. Once again, this procedure failed and the plaintiff contacted the Nashua code enforcement officer who then contacted the

defendant. The defendant, for a third time, had the pest control service return to perform the same treatment. As of October 16, 2003, the date of trial, the plaintiff testified that the third treatment had failed and he had seen numerous roaches.

An employee of the defendant testified that the nature of the problem was that a single unit, within the twenty-four unit building, had been improperly maintained by its tenant. This caused the roach population to flourish despite the pest control service's treatments. That employee further testified that the defendant had now taken steps to remedy the problem by evicting the tenant and changing pest control companies.

The trial court found that the defendant had willfully violated the plaintiff's and his family's right to quiet enjoyment of his tenancy, *see* RSA 540-A:2 (1997), and ordered damages pursuant to RSA 540-A:4, IX. On appeal, the defendant argues that the trial court erred in concluding that the defendant had disturbed the plaintiff's right to quiet enjoyment of his tenancy under RSA 540-A:2. We agree.

The trial court's interpretation of a statute is a question of law, which we review *de novo*. The starting point in any statutory interpretation case is the language of the statute itself. Where the language of a particular statutory provision is at issue, we will focus upon the statute as a whole, not on isolated words or phrases. We will not consider what the legislature might have said or add words that the legislature did not include. *Crowley v. Frazier*, 147 N.H. 387, 389 (2001).

RSA 540-A:2 provides, "No landlord shall willfully violate a tenant's right to quiet enjoyment of his tenancy . . . ." Pursuant to RSA 540-A:4, IX, "Any landlord . . . who violates RSA 540-A:2 or any provision of RSA 540-A:3 shall be subject to the civil remedies set forth in RSA 358-A:10 . . . ." RSA 540-A:2 does not further define a tenant's right to quiet enjoyment; however, we rely upon the common law doctrine that the covenant obligates the landlord to refrain from interference with the tenant's possession during the tenancy. *See Echo Consulting Services v. North Conway Bank*, 140 N.H. 566, 571 (1995) (holding that breach of the covenant of quiet enjoyment occurs when landlord substantially interferes with tenant's beneficial use or enjoyment of the premises); *see also Crowley*, 147 N.H. at 389.

In *Crowley v. Frazier*, we held that a tenant's claims of rodent infestation, plumbing problems, electrical problems, a residual garbage problem, loose and falling ceiling plaster, leaking roofs and walls, and structural problems, *absent* a finding that the tenant lost any *use* of the premises, did not constitute claims that could be construed as violating

that tenant's right to quiet enjoyment under RSA 540-A:2, so as to constitute a basis for damages under RSA 540-A:4, IX. *Id.* at 388, 390. We further held, relying upon the principle that we ordinarily construe a general term in a statute in light of related, specific terms, that the claims made by the tenant were not similar in scope to those prohibited by former RSA 540-A:3 (1997) (amended 1998, 2001, 2003), which also constitute a basis for damages under RSA 540-A:4, IX. *Id.* at 391.

■ We now hold that the insect infestation claim made in this case, like the rodent infestation claim made in *Crowley*, does not constitute a violation of the right to quiet enjoyment under RSA 540-A:2 because the trial court did not find, nor would the record have supported a finding, that the insect infestation caused the plaintiff to lose the use of his premises. Furthermore, this claim is not similar in scope to the specific acts described in RSA 540-A:3 (Supp. 2003) (amended 2003) (prohibiting landlord from, among other things, interrupting utility service, denying tenant access to rented premises, and entering rented premises without consent). *See Crowley*, 147 N.H. at 391.

We do not hold today that no pest infestation claim could violate the covenant of quiet enjoyment, as there may be circumstances where a pest infestation could cause a tenant to lose the use of part or all of the premises. Further, as we stated in *Crowley*, a tenant whose premises are unsafe or unsanitary may have a remedy because such conditions could violate the implied warranty of habitability. *Id.* The proper remedy in such a case would be an award of damages measured by the difference between the agreed upon rent and the fair rental value of the premises as they were during the tenant's occupancy in the unsafe, unsanitary or unfit condition. *Id.* As the trial court made no finding with regard to the implied warranty of habitability, we need not further discuss this issue.

*Reversed.*

BRODERICK, C.J., and NADEAU, DUGGAN and GALWAY, JJ., concurred.