# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2018-0569, <u>Eben Joels v. Nashua-Oxford Bay Associates Limited Partners d/b/a Bay Ridge at Nashua</u>, the court on June 14, 2019, issued the following order:**

Having considered the brief, the memorandum of law, and the record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). We affirm.

The plaintiff, Eben Joels (tenant), appeals a small claim judgment issued by the Circuit Court (<u>Gorman</u>, J.) denying his claims and granting the counterclaims of the defendant, Nashua-Oxford Bay Associates Limited Partners d/b/a Bay Ridge at Nashua (landlord). We construe his brief to contend that the trial court erred by not finding that the landlord: (1) constructively evicted him or violated his right to quiet enjoyment, entitling him to damages under RSA 540-A:4, VII(b) (2007); and (2) unlawfully withheld his security deposit, <u>see</u> RSA 540-A:7, II (2007).

When reviewing a trial court's decision rendered after a hearing on the merits, we uphold the trial court's factual findings and rulings unless they lack evidentiary support or are legally erroneous. <u>O'Malley v. Little</u>, 170 N.H. 272, 275 (2017). We do not decide whether we would have ruled differently than the trial court, but rather, whether a reasonable person could have reached the same decision as the trial court based upon the same evidence. <u>Id</u>. Thus, we defer to the trial court's judgment on such issues as resolving conflicts in the testimony, measuring the credibility of witnesses, and determining the weight to be given evidence. <u>Id</u>. We review the trial court's application of the law to the facts <u>de novo</u>. <u>Id</u>.

We first address whether the trial court erred by finding that the landlord did not constructively evict the tenant or violate his right to quiet enjoyment. A constructive eviction occurs when a landlord so deprives a tenant of the beneficial use or enjoyment of the property that the action is tantamount to depriving the tenant of physical possession. <u>Echo Consulting Services v. North Conway Bank</u>, 140 N.H. 566, 570 (1995). The covenant of quiet enjoyment obligates a landlord to refrain from interfering with a tenant's possession during the tenancy. <u>Id</u>. at 568. Whether a landlord has breached a tenant's right to quiet enjoyment is a question of fact. <u>Id</u>. at 572.

In this case, the tenant contends that the landlord constructively evicted him or violated his right to quiet enjoyment because the landlord did not act

promptly or effectively upon his complaint that the residents of the apartment above him were making excessive noise. The tenant asserts that he first complained about this noise in person on November 11, 2017. However, the landlord's community manager testified that she first received his complaint on December 2, 2017, by e-mail. The tenant's e-mail stated that the noise from upstairs was "not new but the tempo has increased dramatically in the last 3 days." The tenant testified that he complained about the noise from upstairs in response to the downstairs residents' complaints about noise from his apartment.

The manager responded to the tenant's e-mail complaint about the upstairs noise within three days and apologized for not responding more promptly. She requested more details, stating that she wanted "as much information as possible before [she] reach[ed] out to" the upstairs residents. However, the tenant failed to respond to the manager's request for more information until approximately ten days later when the manager sent a follow-up e-mail. The manager testified that, after receiving more information from the tenant, she spoke to the upstairs residents, told the tenant that she had done so, and asked the tenant to contact her if there were any more issues with noise from upstairs. The tenant argues that the landlord did not take effective steps to address his complaint about noise from the upstairs residents. However, the record reflects that the tenant failed to inform the manager that the problem persisted; instead, he notified her that he was terminating the lease prior to its expiration and contrary to its terms.

The tenant complains that the manager chose to investigate the complaints against him by the downstairs residents, but not his complaint against the upstairs residents. However, the manager testified that she responded regularly to the downstairs residents "[b]ecause they were consistently complaining about the noise" from the tenant's apartment. Furthermore, the tenant obstructed the manager's investigation of the noise from his apartment by refusing to allow her to check for loose floor boards in his apartment until she confirmed that she was investigating his complaint about the upstairs residents. The tenant argues that, after investigating, the manager knew that the downstairs residents' noise complaints were false. The manager agreed and, as a result, offered to move the downstairs residents or the tenant to another unit. However, the tenant testified that he had secured another apartment before receiving this offer.

The tenant argues that he was constructively evicted because the landlord took no action to assure his safety and that of his children. Although the tenant's brief states that the downstairs resident came to the tenant's door with a "concealed [s]word," the tenant testified that he went downstairs to confront the downstairs resident, who "had a concealed sword." The tenant did not testify how he knew that the resident was armed with a sword that was "concealed," nor did he testify that the resident threatened him in any way. The record does not reflect that the tenant told the manager about the sword.

2

When the manager first contacted the tenant about the downstairs residents' noise complaint, the tenant accused her of "systematic harassment . . . that interferes with my right to quiet enjoyment." The tenant further asserted that the complaint might be racially motivated and that he had "noticed malicious markings on [his] car which can only be attributed to malicious neighbors," but about which he had not previously complained. However, he provided no details regarding such "markings," either to the manager or to the trial court. The police went to the tenant's apartment once in response to a noise complaint by the downstairs residents. The tenant argues that he did not feel safe because "racial hate crimes are not uncommon." However, the trial court could have reasonably decided that the tenant's claim that the neighbors' actions were racially motivated was speculative. Based upon this evidence, the trial court could have reasonably determined that the tenant's safety was not at risk.

The tenant states that the manager refused to investigate his claim that the upstairs and downstairs residents were colluding to force him to leave the building. However, the manager testified that the upstairs residents moved into the building in 2015, approximately two years before the tenant arrived, and that the downstairs residents moved in after the tenant. Furthermore, the downstairs residents' e-mails to the manager did not mention the upstairs residents.

Neither insect infestation, see Adams v. Woodlands of Nashua, 151 N.H. 640, 642 (2005), rodent infestation, or "numerous violations of the statutory minimum housing standards that result[ ] in unhealthy and hazardous living conditions," Crowley v. Frazier, 147 N.H. 387, 389, 390 (2001), constitutes a violation of a tenant's right to quiet enjoyment, unless it causes the tenant to lose the use of the premises. Adams, 151 N.H. at 642. In this case, the tenant did not testify that he lost the use of any portion of the premises, but only that he "had to leave the place for [his] own sanity." Based upon this record, we conclude that the trial court's rulings that the landlord did not constructively evict the tenant or violate his right to quiet enjoyment are supported by the evidence and not legally erroneous. See O'Malley, 170 N.H. at 275. Accordingly, the tenant was not entitled to damages under RSA 540-A:4, VII(b).

We next address whether the trial court erred in finding that the landlord was entitled to retain the tenant's security deposit. RSA 540-A:7, II authorizes a landlord to deduct unpaid rent from a security deposit. The landlord must provide the tenant with a written, itemized list of any claim for unpaid rent. RSA 540-A:7, II. The tenant does not challenge the trial court's finding that at least a portion of the lease penalties for early termination without the required notice constituted unpaid rent within the statute's meaning. Nor does he challenge the amount of damages set by the trial court as being provided for by the lease. Accordingly, we conclude that the trial court correctly approved the landlord's retention of the tenant's security deposit to satisfy a portion of the amount he owed under the lease.

3

Any remaining issues raised by the tenant in his brief either are not sufficiently developed, see State v. Blackmer, 149 N.H. 47, 49 (2003), or otherwise do not warrant further discussion, see Vogel v. Vogel, 137 N.H. 321, 322 (1993).

Affirmed.

Lynn, C.J., and Hicks, Bassett, Hantz Marconi, and Donovan, JJ., concurred.

**Eileen Fox,**
**Clerk**