NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Rockingham
No. 2018-0490


MARK DIMINICO

v.

CENTENNIAL ESTATES COOPERATIVE, INC.


Argued: September 25, 2019
Opinion Issued: March 11, 2020


Parnell, Michels & McKay, PLLC, of Londonderry (David M. Stamatis and William B. Parnell on the brief, and Mr. Stamatis orally), for the plaintiff.


Smith-Weiss Shepard, P.C., of Nashua (Robert M. Shepard on the brief and orally), for the defendant.


HANTZ MARCONI, J. The defendant, Centennial Estates Cooperative, Inc., appeals, and the plaintiff, Mark DiMinico, cross-appeals, an order of the Superior Court (Schulman, J.) awarding declaratory and injunctive relief to the plaintiff. The plaintiff is a tenant at a manufactured housing community owned by the defendant. The trial court ruled that the defendant violated the plaintiff's right to quiet enjoyment when it deforested and regraded a portion of the lot leased by the plaintiff. We affirm.

The trial court found the following relevant facts. The defendant, a nonprofit consumer cooperative association, is the owner of a manufactured housing park in Derry known as Centennial Estates. The plaintiff and his daughter purchased a manufactured home in Centennial Estates in 2012. The deed to the manufactured home states that the home is located on "Lot 30" of the park. The plaintiff also entered into a "Member Occupancy Agreement" with the defendant at the time he purchased his home. The Member Occupancy Agreement stated that "the [C]orporation leases to the Member and the Member leases from the Corporation 26 Wayne Drive (street address) (hereinafter called the 'Lot') in the community," and that, "[u]pon payment of the rental herein, and upon compliance with the other terms of this agreement, the bylaws of the Corporation, and the Community Rules established by the Members, . . . the Member shall have the perpetual right to occupy said lot."

The plaintiff's home is located on a corner lot at the front of the park. To the south there is a small stand of trees lining the border of the park, to the west there is a long, grassy yard and trees separating the lot from a public road, and to the north the lot faces Wayne Drive, a road in the park. Prior to August 2016, the lot was bordered to the east by trees and vegetation.

That month, however, the defendant decided to improve the lot that abuts the east side of the plaintiff's lot. A home had previously been placed on this lot, but it was no longer standing, and the lot was unoccupied. In order to make the lot habitable, the defendant had to dig a trench and install buried electrical conduit, install a new septic system, install fill over the septic system, regrade the lot, and construct a concrete pad upon which a manufactured home could be placed. As part of this project, the defendant decided to make changes to the plaintiff's lot. The defendant removed the trees and vegetation on the eastern portion of the plaintiff's lot and filled in the area with truckloads of boulders and dirt, creating a six-foot berm on the lot's eastern section.

The plaintiff was not made aware of the defendant's plans to alter his lot, and did not discover the changes until after they occurred because he had been away visiting his father. The plaintiff complained to the defendant's Board of Directors, seeking to have his lot restored to its prior condition and to limit the defendant's work to the abutting lot. In response, the defendant told the plaintiff that he had no rights with respect to his lot outside of the physical footprint of his manufactured home.

Eventually, the plaintiff filed the instant petition. He contended that the defendant's actions violated his right to quiet enjoyment of the lot. He sought a judicial declaration that he leased the entirety of the lot, not just the portion comprising the footprint of his manufactured home, as well as an injunction ordering the defendant to restore the lot's prior topography and vegetation, and

an award of attorney's fees.  After a trial and a view, the court ruled that the plaintiff had "a leasehold interest in the entirety of Lot 30, as depicted on Plan 900, as recorded at the Rockingham County Registry of Deeds."  The court further ruled that the defendant violated the plaintiff's right to quiet enjoyment by deforesting and regrading his lot, and ordered the defendant to expend no more than $10,000 to restore the lot to its prior condition.  However, the court declined to award the plaintiff attorney's fees.  The parties filed motions for reconsideration, which were denied.  These appeals followed.

On appeal, the defendant argues that the trial court erred in ruling that the plaintiff's leasehold extended beyond the physical footprint of his manufactured home.  In addition, the defendant contends that it did not violate the plaintiff's right to quiet enjoyment by deforesting and regrading the lot upon which his manufactured home sits.  The plaintiff argues that the court's rulings regarding the scope of his leasehold and the existence of a quiet enjoyment violation are correct, but, on cross-appeal, asserts that the court erred in limiting the extent to which the defendant must remediate the lot and by denying him attorney's fees.

II

We begin by ascertaining the scope of the plaintiff's leasehold.  To do so, we look to the parties' lease.[1]  A lease is a form of contract that is construed in accordance with the standard rules of contract interpretation.  Echo Consulting Services v. North Conway Bank, 140 N.H. 566, 569 (1995).  We will give the language used by the parties its common meaning as understood by reasonable people and, in the absence of ambiguity, we will determine the parties' intent from the plain meaning of the language used.  Tulley v. Sheldon, 159 N.H. 269, 272 (2009).  When construing disputed provisions in a lease, we must analyze the lease in its entirety.  Echo Consulting, 140 N.H. at 569.  The interpretation of a lease is ultimately a matter of law for this court to decide.  Tulley, 159 N.H. at 272.

As noted above, the plaintiff and the defendant executed a document entitled "Member Occupancy Agreement" at the time the plaintiff purchased his manufactured home.  The Member Occupancy Agreement states that the defendant agreed to lease a "Lot" to the plaintiff located at "26 Wayne Drive," and further states that the plaintiff "shall have a perpetual right to occupy said

---

[1] In arguing that the plaintiff's leasehold is limited to the footprint of his manufactured home, the defendant cites various sections in RSA chapter 205-A, the statutory chapter governing manufactured housing parks in New Hampshire, as well as RSA chapter 540-A.  However, the defendant's citations to these statutes are unavailing because, as the defendant ultimately concedes, "[i]t certainly would be possible" under these statutory schemes "for a tenant to be granted a leasehold interest in the entirety of his or her lot within a manufactured housing park."  Thus, the scope of the plaintiff's leasehold is to be determined by the parties' lease agreement, not by statute.

3

Lot" so long as he complies with the terms of the Member Occupancy Agreement, the park's community rules, and the park's bylaws. The Member Occupancy Agreement also incorporates the park's community rules and bylaws by reference. Thus, the lease in this case is comprised of the Member Occupancy Agreement, as well as the park's community rules and bylaws.

The defendant argues that the lease allows the plaintiff to place his manufactured home on the lot, but otherwise confers no leasehold interest in the lot. According to the defendant, the "Lot" that the plaintiff has a "right to occupy," as per the Member Occupancy Agreement, is limited to the footprint of his manufactured home. In advancing this argument, the defendant notes that the community rules "do not define the dimensions of a lot for a . . . tenant within the Cooperative," and that the rules do not state that a tenant's leasehold interest extends beyond the footprint of his or her home.

We are not persuaded by the defendant's contentions. The lease, construed as a whole, establishes that the plaintiff has various rights and responsibilities with respect to a lot that is greater in size than the footprint of his home. For example, the park's community rules state that tenants "are liable for damages, injury or loss incurred in their homes and on their lot." (Emphasis added.) Tenants are also responsible for "[u]pkeep of their lot," and for "[t]he care, maintenance and snow removal of their own walk-ways and driveways." The community rules also allow tenants to have a "utility building" on their lot, so long as they obtain written approval from the park's Board of Directors after submitting a plan which shows the building's proposed "location on the lot." Tenants must keep their yards "neat and free of debris," and must keep their lawns "trimmed and mowed." While tenants are responsible for the upkeep of their own lots, the cooperative is responsible for the "[m]aintenance of . . . common areas." Given these rights and responsibilities, and the allocation thereof between the cooperative and tenants, a reasonable tenant would understand that his lot is not limited solely to the footprint of his manufactured home. See id.

This conclusion does not end our inquiry, however, for we must still determine whether the trial court erred in declaring that the plaintiff's leasehold extends to "the entirety of Lot 30, as depicted on Plan 900, as recorded at the Rockingham County Registry of Deeds." The defendant, as the appealing party, has the burden of demonstrating that the court committed reversible error. Gallo v. Traina, 166 N.H. 737, 740 (2014). The defendant argues on appeal that the court's reliance upon Plan 900 was misplaced because the plan does not accurately depict the park and the lots therein. The defendant notes, for example, that the park's deed describes a fifty-eight-unit mobile home park whereas Plan 900 shows a forty-seven-unit park.

From our review of the materials submitted by the parties, Plan 900 was apparently admitted without objection at trial, and the defendant does not

4

argue on appeal that the plan was inadmissible. Accordingly, we construe the defendant's appellate argument to challenge the weight afforded Plan 900 by the trial court in resolving the scope of the plaintiff's leasehold. We defer to the trial court's determination regarding the weight to be given evidence unless that determination is unsupported by the evidence or is erroneous as a matter of law. See McCabe v. Arcidy, 138 N.H. 20, 24 (1993). Our review of the evidence at trial reveals that the vice president of the defendant's Board of Directors, who had also been a resident at the park for over thirty-seven years, testified that Lot 30 on Plan 900 accurately depicted the lot located at 26 Wayne Drive, i.e., the plaintiff's lot. Thus, regardless of whether Plan 900 accurately depicts the layout of the park as a whole, there is evidence in the record supporting the court's determination that Plan 900 accurately depicted the plaintiff's lot. Accordingly, we defer to the court's determination regarding the weight to be given Plan 900. See id. Because the defendant, as the appealing party, has not demonstrated that the court committed reversible error in declaring that the plaintiff's leasehold extends to "the entirety of Lot 30, as depicted on Plan 900," we affirm that ruling. See Gallo, 166 N.H. at 740.

III

Having affirmed the court's ruling that the plaintiff's leasehold extends to the entirety of the lot, we now consider whether the defendant violated the plaintiff's right to quiet enjoyment when it deforested and regraded the lot. The covenant of quiet enjoyment is a common law doctrine that obligates the landlord to refrain from interferences with the tenant's possession during the tenancy. Crowley v. Frazier, 147 N.H. 387, 389 (2001). It is implied by law in every lease. Echo Consulting, 140 N.H. at 568; see also RSA 540-A:2 (2007). A breach of the covenant of quiet enjoyment occurs when the landlord "substantially interferes with the tenant's beneficial use or enjoyment of the premises." Echo Consulting, 140 N.H. at 571. The landlord's interference need not rise to the level of a constructive eviction, however. See id.; see also id. at 570 ("A constructive eviction occurs when the landlord so deprives the tenant of the beneficial use or enjoyment of the property that the action is tantamount to depriving the tenant of physical possession.").

Whether the covenant of quiet enjoyment has been breached in a particular case is a "question[] of fact for the trial court to determine in the first instance." Id. at 572; see also Adams v. Woodlands of Nashua, 151 N.H. 640, 642 (2005) (reversing trial court's ruling that landlord violated covenant of quiet enjoyment because it was unsupported by the record). We will not disturb the trial court's ruling on this factual issue unless it lacks evidentiary support or is erroneous as a matter of law. See Lane v. Barletta, 172 N.H. ___, ___ (decided Nov. 22, 2019) (slip op. at 3). Our deference to the trial court's ruling in this case is heightened by the fact that the evidence included a view of

5

the plaintiff's lot.  See N.H. Donuts, Inc. v. Skipitaris, 129 N.H. 774, 779 (1987).

There is ample evidentiary support for the court's conclusion that the deforesting and regrading of the plaintiff's lot constituted a "substantial interference with [his] use and enjoyment of [the] lot."  The plaintiff testified that the lot's wooded buffer gave the lot privacy and seclusion, characteristics that attracted him to it in the first place.  See Northern Terminals, Inc. v. Smith Grocery, Etc., 418 A.2d 22, 26 (Vt. 1980); see also 52A C.J.S. Landlord & Tenant § 768, at 61 (2012) (noting that the covenant of quiet enjoyment "is concerned with the right to enjoy unimpaired the physical status of the property leased at the time of the execution of the lease").  He further testified that the buffer had been within ten to fifteen feet of his bedroom window, and that, after the defendant's work had concluded, this area that had previously been "covered in trees and . . . foliage was now covered in . . . dirt."  The plaintiff also testified that the wooded portion of his lot provided him with an "escape," with an "area to go [to] be alone . . . covered in trees," and that he could no longer use his lot for this purpose after the defendant's alterations.  See Pollock v. Morelli, 369 A.2d 458, 461 (Pa. Super. Ct. 1976) (finding breach of covenant of quiet enjoyment where the "basic structural changes wrought by the landlord" substantially decreased property's utility and eliminated "the attractive features of the demised premises").  The plaintiff also submitted extensive photographic evidence showing the lot's condition after it was deforested and regraded; our review of this evidence confirms that, in addition to the testimony summarized above, there is substantial evidentiary support for the court's conclusion that the defendant's actions of "replac[ing] the [lot's] wooded buffer with a wall of dirt" constituted a "substantial interference with [the plaintiff's] use and enjoyment of his lot."

The defendant argues that it did not violate the plaintiff's right to quiet enjoyment because it had the right under the lease "to enter onto the lot to cut trees and to make improvements to the infrastructure of the manufactured housing park."  The defendant contends that it needed to enter the plaintiff's lot to dig a utility trench from a telephone pole behind the plaintiff's lot to the adjoining lot, which required the defendant to remove trees on the lot and erect a dirt wall, which would serve as fill for the creation of the trench.  Even assuming arguendo, however, that the defendant could physically alter the dimensions of the plaintiff's lot in order to serve an abutting lot, the defendant overlooks that the trial court was unable to determine, based on the evidence before it, that the alterations to the plaintiff's lot were necessary to make improvements to the abutting lot.  Indeed, the court specifically noted that "there was no evidence that any electrical conduit actually passed through [the plaintiff's] lot."  The defendant has not demonstrated that it sought reconsideration of this finding, see State v. Mouser, 168 N.H. 19, 27 (2015), nor does the defendant argue on appeal that the court's finding lacks evidentiary support, see Lane, 172 N.H. at ___ (slip op. at 3).  For these reasons, we need

6

not address the issue further, and affirm the trial court's ruling that the defendant violated the plaintiff's right to quiet enjoyment by deforesting and regrading his lot.

IV

We next consider the plaintiff's argument, advanced on cross-appeal, that the trial court erred by limiting the extent to which the defendant must remediate its quiet enjoyment violation.[2] Although the court determined that it would cost approximately $30,000 to restore the plaintiff's lot to its prior condition, the court capped the defendant's required remediation expenditures at $10,000. The plaintiff argues that the court had no "objective basis" for doing so.

We review the trial court's decision to grant equitable relief for an unsustainable exercise of discretion. Benoit v. Cerasaro, 169 N.H. 10, 19 (2016). In doing so, we determine whether the record establishes an objective basis sufficient to sustain the discretionary judgment made. Id. at 20. The trial court has broad and flexible equitable powers which allow it to shape and adjust the precise relief to the requirements of a particular situation. Id. The party asserting that a ruling awarding equitable relief is unsustainable must demonstrate that the ruling was unreasonable or untenable to the prejudice of his case. Id.

The plaintiff did not seek damages for the defendant's quiet enjoyment violation. Instead, he sought an order of remediation "so that as nearly as possible [his lot] is restored to the condition it was in prior to the work . . . performed" by the defendant. While noting that the plaintiff successfully proved that it would cost approximately $30,000 to restore his lot to its prior condition, the court determined that ordering full remediation would be "disproportionate to the value of [the plaintiff's] lot." The court pointed out that "the cost of a full remediation would be equal to 54 months . . . of rent" for the plaintiff, and "would require each of the [cooperative's] 57 tenants to pay more than $500." "At the same time," reasoned the court, "a partial remediation could go a very long way towards restoring [the plaintiff's] seclusion and privacy and vegetation." Thus, in flexibly exercising its equitable powers, the court ordered the defendant to partially remediate the plaintiff's lot up to

---

[2] In addition to the plaintiff's contentions regarding the injunctive relief fashioned by the trial court, the defendant asserts that the court erred by awarding any injunctive relief because it owns the lot, and, according to the defendant, "[t]he court cannot order a park owner to repair/remediate its own land, unless the damage to the land interfered with the ability of the tenant to use his or her manufactured housing unit." The defendant is incorrect. Trial courts can award injunctive relief to remedy the violation of a tenant's right to quiet enjoyment of leased property. See, e.g., Checker Oil Co., Etc. v. Harold H. Hogg, Inc., 380 A.2d 815, 819-20 (Pa. Super. Ct. 1977); see also 52A C.J.S. Landlord & Tenant § 777, at 69.

$10,000, and further ordered the parties to cooperate in developing a plan for the lot's partial restoration.

Our task on appeal is not to determine whether we would have ordered a different measure of equitable relief than did the trial court. See id. at 21. Instead, our task is to determine whether the record establishes an objective basis sufficient to sustain the court's discretionary judgment. See id. at 20. In light of the significant disparity in value between the plaintiff's monthly rent and the amount the defendant would have to expend to fully remediate the lot, we conclude that the record establishes an objective basis sufficient to sustain the court's decision ordering partial remediation up to $10,000. See id. at 20. We therefore affirm that decision.

V

The plaintiff's cross-appeal also challenges the trial court's decision denying him attorney's fees. The plaintiff argues he was entitled to an award of attorney's fees for two reasons: bad faith and RSA 540-A:4, IX (Supp. 2019). We begin with the latter contention.

A tenant's right to quiet enjoyment is protected both by the common law and by statute. See Crowley, 147 N.H. at 389 ("The right to or covenant of quiet enjoyment is a common law doctrine . . . ."); RSA 540-A:2 ("No landlord shall willfully violate a tenant's right to quiet enjoyment . . . ."); see also Adams, 151 N.H. at 641 (explaining that "we rely upon the common law doctrine" in construing the statutory protection for quiet enjoyment contained in RSA 540-A:2). Although the general rule in New Hampshire is that parties pay their own attorney's fees, Fat Bullies Farm, LLC v. Devenport, 170 N.H. 17, 29 (2017), RSA 540-A:4, IX(a) provides for a mandatory award of attorney's fees against "[a]ny landlord . . . who violates RSA 540-A:2," RSA 540-A:4, IX(a); see id.; RSA 358-A:10, I (2009); Carter v. Lachance, 146 N.H. 11, 13-14 (2001).

The trial court declined to award the plaintiff attorney's fees pursuant to RSA 540-A:4, IX(a) because the plaintiff "never cited . . . RSA 540-A:4" in his various filings. On cross-appeal, the plaintiff argues that, because the trial court found that the defendant violated his right to quiet enjoyment, it was required to award him attorney's fees pursuant to RSA 540-A:4, IX(a). We disagree.

"It is generally held that where a remedy is given by statute, the statute must be specially declared upon, or, at all events, the facts must be so alleged that the court, on the face of the declaration, can see that the action is founded on the statute." Gilman v. County of Cheshire, 126 N.H. 445, 450 (1985) (quotation omitted); accord Milford Lumber Co. v. RCB Realty, 147 N.H. 15, 20 (2001). However, RSA 540-A:4, IX(a) unambiguously states that a landlord in violation of RSA 540-A:2 shall be subject to an award of reasonable attorney's

fees. RSA 540-A:4, IX(a); RSA 358-A:10, I; see Carter, 146 N.H. at 13-14. This "relieve[s] the plaintiff from the usual requirement of pleading . . . attorney's fees"; "[i]nstead, the statute mandates that the trial court award the prevailing plaintiff . . . reasonable attorney's fees" if the court determines that the landlord has violated RSA 540-A:2. Carter, 146 N.H. at 14.

We note, however, that RSA 540-A:2 only prohibits willful violations of a tenant's right to quiet enjoyment. RSA 540-A:2; see Rood v. Moore, 148 N.H. 378, 379 (2002) (construing "willfully" as that term is used in RSA 540-A:2). Thus, it does not follow that, simply because a trial court determines that a landlord has violated a tenant's right to quiet enjoyment, the court has necessarily determined that the landlord violated RSA 540-A:2. See Rood, 148 N.H. at 379. Unless the court determines that the landlord's quiet enjoyment violation was willful, the court has not found a violation of the statute. See RSA 540-A:2. Here, although the trial court ruled that the defendant violated the plaintiff's right to quiet enjoyment, it did not find that that violation was willful. Thus, the court's ruling did not entitle the plaintiff to an award of mandatory attorney's fees pursuant to RSA 540-A:4, IX(a).

We conclude by addressing the plaintiff's argument that the trial court erred by not awarding attorney's fees for bad faith conduct. See Harkeem v. Adams, 117 N.H. 687, 690-91 (1977). As noted, the general rule in New Hampshire is that parties pay their own attorney's fees. Fat Bullies Farm, 170 N.H. at 29. A judicially-created exception to this rule allows for attorney's fees to be awarded based on bad faith litigation. Id. at 29-30. An award of attorney's fees under this exception "is appropriate when one party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, when the litigant's conduct can be characterized as unreasonably obdurate or obstinate, and when it should have been unnecessary for the successful party to have brought the action." Id. at 30 (quotation and brackets omitted).

We will not overturn the trial court's decision concerning attorney's fees absent an unsustainable exercise of discretion. Id. To warrant reversal, the discretion must have been exercised for reasons clearly untenable or to an extent clearly unreasonable to the prejudice of the objecting party. Id. In evaluating the trial court's ruling on this issue, we acknowledge the tremendous deference given a trial court's decision regarding attorney's fees. Id. If there is some support in the record for the trial court's determination, we will uphold it. Id.

The plaintiff contends that the trial court erred by not awarding attorney's fees because the court "implicitly found that the [defendant] acted in bad faith." The plaintiff argues that this implicit finding is contained within the court's determination that the defendant violated the implied covenant of good faith and fair dealing by removing the wooded buffer on the plaintiff's lot. We need not reach that argument, however, because the plaintiff's contention

9

regarding the trial court's implicit findings overlooks the court's explicit findings.  See In the Matter of Salesky & Salesky, 157 N.H. 698, 702 (2008) ("The interpretation of a court order is a question of law, which we review de novo.").  The court found that "[t]his case involved a good faith dispute concerning the scope of [the plaintiff]'s leasehold," and that the defendant's position "was certainly not frivolous."  Because the record supports the trial court's express finding that the defendant did not act in bad faith, we cannot say the court unsustainably exercised its discretion in declining to award attorney's fees to the plaintiff.

Affirmed.

    HICKS, BASSETT, and DONOVAN, JJ., concurred.