# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2019-0732, <u>Peter Potenza & a. v. Joshua Lanctot & a.; Joshua Lanctot & a. v. Peter Potenza & a.</u>, the court on October 23, 2020, issued the following order:**

Having considered the opening and reply briefs filed by Joshua and Cindy Lanctot (the landlords), the opposing brief filed by Peter and Kelley Potenza (the tenants), and the record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). The landlords appeal orders of the Circuit Court (<u>Gardner</u>, J.) following a merits hearing on the tenants' petition alleging that the landlords willfully violated the tenants' rights to quiet enjoyment, <u>see</u> RSA 540-A:2 (2007), :4 (Supp. 2019), and on the landlords' small claim action alleging that the tenants breached the lease when they failed to pay rent and abandoned the property. We affirm.

The following facts are either derived from the trial court's orders or relate the contents of documents included in the appellate record. On November 13, 2018, the tenants moved into the subject premises pursuant to a lease agreement with the landlords. The lease agreement was for a 12-month term and required the tenants to pay $1,995 in monthly rent.

On November 16, three days after they moved into the home, the tenants discovered what they believed to be mold in two of the upstairs bedroom closets. On November 17, the tenants informed the landlords about the mold growth and the lack of heat on the second floor. The landlords responded on November 19 that Absolute Resource Associates (ARA) would inspect the home on November 28. ARA did so on November 30, and issued a report on December 10 stating that there was visible mold on the closet door in one of the bedrooms and on the attic roof sheathing. Included in the report was an analysis of samples from the residence, which showed heavy amounts of the fungus Cladosporium. ARA recommended that the mold be professionally remediated. The landlords did not remediate the mold until February 12, 2019. Inspection reports submitted at trial supported the tenants' contention that the second floor of the home lacked heat.

The plaintiffs filed their petition on February 5 and moved out of the premises on February 8. Thereafter, the landlords filed a small claim action against the tenants alleging that the tenants abandoned the property in violation of the lease agreement, seeking damages for unpaid rent for the months of January, February, and March 2019, among other things. The landlords represented that they would retain the tenants' security deposit to

"cover[] 1 of the 3 months of unpaid rent." The tenants subsequently filed a counterclaim, alleging that the landlords violated statutory requirements pertaining to security deposits. Each of the parties sought attorney's fees.

The trial court held a merits hearing on offers of proof on March 11. With regard to the tenants' petition, the trial court found that the landlords willfully violated the tenants' rights to quiet enjoyment "by not assuring that there was sufficient heat on the second floor and by failing to remediate the mold problem in a more prompt manner." The court found that the landlords were aware of the mold and heat issues "as early as November 17, 2018," but did not do any work to "address the tenants' concerns" until after the tenants filed their February 5 petition. The trial court, therefore, assessed the landlords $1,000 in statutory damages and reasonable attorney's fees. See RSA 540-A:4, IX; see also Carter v. LaChance, 146 N.H. 11, 14 (2001) (holding that a plaintiff prevailing on a claim brought under RSA chapter 540-A is entitled to the statutory minimum of $1,000 in damages "plus costs and reasonable attorney's fees"). As to the landlords' small claim complaint, the trial court found that the tenants failed to pay rent for January, February, and March 2019, and that the landlords, accordingly, were entitled to judgment in the amount of $2,992.50 representing three months' worth of one-half of the $1,995 monthly rent—$997.50.[1]

In response to the parties' motions for reconsideration, the trial court reconsidered the damages awarded to the landlords on their small claim complaint. Because the tenants vacated the premises on February 8, 2019, and the landlords sold the property on March 15, the court reduced the damages awarded to $1,463 "to account for the time until the property was sold and the restitution which [the] court . . . limited for that time frame as the landlords had made initial good faith efforts to address the issues raised by the tenants."

The tenants subsequently moved for clarification, asking the court to require the landlords to return $532 from the tenants' $1,995 security deposit. The tenants contended that, under the parties' lease, the landlords are required to return the unused balance of the security deposit to the tenants. The tenants explained that $532 is the amount left after subtracting from the security deposit the $1,463 they owed the landlords on the small claim action. The court agreed and granted the tenants' motion.

---

[1] The landlords contend that $2,992.50 does not represent three months' worth of one-half of the $1,995 monthly rent. Rather, they argue, $2,992.50 represents two and one-half months' rent ($4,987.50) less the $1,995 security deposit that the landlords assert the trial court allowed them to retain and apply toward the unpaid rent. We do not share the landlords' interpretation of the trial court's orders. Had the trial court intended to award the landlords two and one-half months' rent ($4,987.50), it would have entered a damage award in that amount. It did not do so.

2

In reviewing a trial court's decision rendered after a trial on the merits, we uphold its factual findings and rulings unless they lack evidentiary support or are legally erroneous. O'Malley v. Little, 170 N.H. 272, 275 (2017). We do not decide whether we would have ruled differently than the trial court, but rather, whether a reasonable person could have reached the same decision as the trial court based upon the same evidence. Id. Thus, we defer to the trial court's judgment on such issues as resolving conflicts in the evidence and determining the weight to be given evidence. Id. Nevertheless, we review the trial court's application of the law to the facts de novo. Id.

On appeal, the landlords first contend that the tenants were not constructively evicted. Given that the trial court did not frame its conclusions in those terms, we decline the landlords' invitation to do so on appeal.

The landlords next assert that the trial court erred by finding that they violated the tenants' quiet enjoyment by failing to remediate the mold problem promptly and/or by failing to adequately heat the second floor of the premises. The tenants counter that the landlords have waived this argument because it was not included in the landlords' notice of appeal. We conclude that the notice of appeal questions fairly comprise the issue of whether the trial court erred when it determined that they violated the tenants' rights to quiet enjoyment. See Sup. Ct. R. 16(3)(b).

A breach of the covenant of quiet enjoyment occurs when the landlord substantially interferes with the tenant's beneficial use or enjoyment of the premises. DiMinico v. Centennial Estates Corp., 173 N.H. ___, ___ (decided March 11, 2020) (slip op. at 5). To be actionable, the landlord's interference need not rise to the level of a constructive eviction, however. Id. at ___ (slip op. at 5). A tenant's right to quiet enjoyment is protected both by the common law and by statute. Id. at ___ (slip op. at 8); see Crowley v. Frazier, 147 N.H. 387, 389 (2001) ("The right to or covenant of quiet enjoyment is a common law doctrine . . . ."); RSA 540-A:2 ("No landlord shall willfully violate a tenant's right to quiet enjoyment . . . ."); see also Adams v. Woodlands of Nashua, 151 N.H. 640, 642 (2005) (explaining that "we rely upon the common law doctrine" in construing the statutory protection for quiet enjoyment contained in RSA 540-A:2). Whether the covenant of quiet enjoyment has been breached in a particular case is a question of fact for the trial court. DiMinico, 173 N.H. at ___ (slip op. at 5). We will not disturb the trial court's ruling on this factual issue unless it lacks evidentiary support or is erroneous as a matter of law. Id. at ___ (slip op. at 5).

The landlords contend that the trial court erred in finding that they violated the tenants' rights to quiet enjoyment by failing to remediate the mold problem more promptly because, they assert, they "promptly engaged [a] mold remediation service," which "promptly investigated the site of the claimed mold," and "found the mold was not too extensive and could be remediated."

3

As to the heating issue, the landlords assert that the January 31, 2019 home inspection report "is not an adequate basis to find [they] deprived [the] [t]enants of heat to the second floor," and that the municipal code enforcement office report "refutes [the] [t]enants' claim that [the] [l]andlords deprived [the] [t]enants of heat to the second floor." (Bolding and emphasis omitted.)

To the extent that the landlords intend to challenge the sufficiency of the evidence to support the trial court's findings, we conclude that the evidence was sufficient. At the merits hearing, the tenants proffered that they notified the landlords about the mold issue on November 17, 2018. There is sufficient evidence to support the conclusion that the landlords did not schedule remediation for the mold until after the tenants moved out of the premises in February. Remediation began on February 11, 2019, and was completed on February 12. The record is sufficient to support the trial court's finding that the landlords failed to remediate the mold problem promptly.

With regard to the heating issue, the landlords proffered that because the house is heated with forced air, to maintain heat throughout the house "requires the ventilation system to be adjusted" and that the landlords offered to "come out and check the vent[s], and that offer was declined" by the tenants. The tenants countered that they notified the landlords about the heat issue around the time that they moved into the house and that the landlords did not adjust the vents in the home until after the tenants moved out. The tenants contended that the landlords never offered to "come over and fix the vents."

The tenants produced a report of a January 31, 2019 home inspection, which stated that there was "very little heat coming out" of the heating sources in the home even though the thermostat was set at 70 degrees. The report included photos showing temperatures downstairs ranging from 43 to 52 degrees and temperatures upstairs ranging from 42 to 46 degrees. An April 1, 2019 report from the municipal code enforcement office stated that during an earlier inspection, "it was noticed that the heat was turned down to approximately 53 degrees" and that "[t]he dampers were all completely opened in an un-balanced [manner]." In addition, the "basement door was frozen open" and there was no heat installed in the second floor bathroom. There is sufficient evidence to support the trial court's finding that the landlords failed to ensure that the second floor of the home had adequate heat.

Although the evidence before the trial court was conflicting, those conflicts were for the trial court to resolve in the first instance. See O'Malley, 170 N.H. at 275. To the extent that the landlords' arguments challenge the weight the trial court gave to the evidence before it, we defer to the trial court on such issues. See id.

The landlords next assert that there was no evidence to support the trial court's determination that the mold and heating issues substantially interfered

with the tenants' beneficial use or enjoyment of the premises. See DiMinico, 173 N.H. at ___ (slip op. at 5). To support this assertion, the landlords rely upon cases where there was no violation of the right to quiet enjoyment because there was no finding that the tenants had lost any use of the premises. See Crowley, 147 N.H. at 389; see also Adams, 151 N.H. at 642. The landlords acknowledge that, in the instant case, "the trial court did find that Tenants claimed to have lost the use of part of the premises," but contend that "this finding was not supported by the evidence in the record." (Emphasis added.) To the contrary, the finding is supported by the tenants' offer of proof, which included their assertion that, as a result of the mold upstairs, and having been told by ARA that their daughters "should be nowhere near" it, they moved their family downstairs, as well as their assertion that the upstairs was not inhabitable because of both the mold and heating issues.

The landlords next argue that the tenants are not entitled to an award of attorney's fees because the trial court failed to find that they willfully violated the tenants' rights to quiet enjoyment. See DiMinico, 173 N.H. at ___ (slip op. at 9); see also RSA 540-A:2. However, unlike the trial court in DiMinico, the trial court in this case specifically found that the landlords violated RSA 540-A:2, which prohibits the willful violation of a tenant's right to quiet enjoyment, and, thus, made the requisite finding of willfulness.

The landlords next contend that the trial court erred by rejecting their affirmative defense of abandonment. RSA 540-A:4, XII provides that relinquishment or abandonment of possession is an affirmative defense to a tenant's claim under RSA 540-A:2. By statute, "[a]bandonment of possession means all tenants have physically vacated the premises without the intent to return." RSA 540-A:4, XII(b). There is a rebuttable presumption that the tenants have abandoned the premises if: (1) the landlord provided the tenants with a written property abandonment notice; and (2) at least two of four statutorily-enumerated conditions are present. Id. The four statutorily-enumerated conditions are: (1) all adult tenants have notified the landlord in writing of their intent to vacate the premises by a certain date and that date has passed; (2) all keys have been returned to the landlord; (3) the tenant has removed all or a majority of the tenant's personal property from the premises; and (4) the tenants have not paid rent for a period of more than 91 days. Id.

Here, it is undisputed that the tenants did not vacate the premises until February 8, after having filed their petition alleging that the landlords breached their rights to quiet enjoyment, and long after notifying the landlords of the mold and heating issues. Under these circumstances, we conclude that the trial court did not err when it rejected the landlords' affirmative defense of abandonment.

The landlords next argue that the trial court erred by not awarding attorney's fees to them based upon the tenants' breach of the parties' lease.

5

The lease provided that, in the event that the tenants failed to pay rent, the tenants were to pay the landlords "any and all costs and expenses, paid or incurred by [the landlords] in obtaining payment by [the tenants] of such delinquent sum(s), including reasonable attorneys' fees, all as permitted by law." The tenants counter that the landlords failed to preserve this argument. They contend that the landlords' small claim action did not seek attorney's fees and that the landlords never argued in the trial court that the lease entitled them to such fees.

The record on appeal shows that, although the trial court understood that the parties sought to recover attorney's fees in the small claim action, and although the landlords filed a motion for reconsideration, they never alerted the trial court that its failure to award them attorney's fees constituted error. The trial court must have had the opportunity to consider any issues asserted by the landlords on appeal; thus, to satisfy this preservation requirement, any issues which could not have been presented to the trial court before it issued its order on the merits must have been presented to it in a motion for reconsideration. See LaMontagne Builders v. Bowman Brook Purchase Group, 150 N.H. 270, 274 (2003); N.H. Dep't of Corrections v. Butland, 147 N.H. 676, 679 (2002). Under these circumstances, we agree with the tenants that the landlords' arguments related to their entitlement to attorney's fees pursuant to the lease are not preserved for our review. See Bean v. Red Oak Prop. Mgmt., 151 N.H. 248, 250 (2004).

The landlords next assert that the trial court erred by ordering them to return the balance of the security deposit to the tenants. The landlords argue that the tenants forfeited their right to the security deposit when they failed to pay rent in January 2019. This, too, is an argument that the landlords have not demonstrated that they preserved, and that, accordingly, we decline to address substantively. See id. Any issues that the landlords raised in their notice of appeal, but failed to brief, are deemed waived. See In re Estate of King, 149 N.H. 226, 230 (2003).

Affirmed.

Hantz Marconi and Donovan, JJ., concurred; Houran, J., retired superior court justice, specially assigned under RSA 490:3, concurred.

**Timothy A. Gudas,**
**Clerk**

6